[No. B058435. Second Dist., Div. Six. Oct. 15, 1992.]

SANDPIPER MOBILE VILLAGE, Plaintiff and Appellant, v.
CITY OF CARPINTERIA, Defendant and Respondent.

**COUNSEL**

Jagiello & Pech, Robert J. Jagiello and Debra K. Butler for Plaintiff and Appellant.

Endeman, Lincoln, Turek & Heater, Donald R. Lincoln, Linda Reich Duncan, Hatch & Parent, Stanley C. Hatch and Thomas D. Wise for Defendant and Respondent.

OPINION

GILBERT, J.—Here we uphold the rent control ordinance of the City of Carpinteria because: (1) it does not exact a compensable physical taking of the property of appellant, Sandpiper Mobile Village (*Yee* v. *Escondido* (1992) 503 U.S. __ [118 L.Ed.2d 153, 112 S.Ct. 1522]), (2) it is rational and serves a legitimate public purpose and therefore does not violate substantive due process, and (3) on its face it validly regulates mobilehome rent.[1]

We do not consider its validity as applied because Sandpiper did not allege requisite facts in its complaint to raise this issue.

## BACKGROUND AND CONTENTIONS

Sandpiper owns and operates a mobilehome park in Carpinteria. By judgment on the pleadings, the trial court denied Sandpiper's challenge to the constitutionality of Carpinteria's mobilehome park rent stabilization ordinance. We affirm.

We review this judgment by the same standards we use to review a judgment entered after the sustaining of a demurrer without leave to amend. (See 6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 263, pp. 564-565.)

We deem true all material and properly pleaded facts. We may not consider opinions, contentions, deductions or conclusions of fact or law alleged. (*Casella* v. *City of Morgan Hill* (1991) 230 Cal.App.3d 43, 48 [280 Cal.Rptr. 876], cert. den. __ U.S. __ [118 L.Ed.2d 387, 112 S.Ct. 1665]; *Agins* v. *Tiburon* (1980) 447 U.S. 255, 259, fn. 6 [65 L.Ed.2d 106, 111, 100 S.Ct. 2138].)

The maximum site rent allowed under the ordinance is the sum of the rent in effect on July 1, 1979, increased by 75 percent of the ratio of change in the consumer price index. The ordinance permits a park owner to apply for additional rent increases to ensure a just and reasonable return on investment. No provision in the ordinance permits park owners to immediately increase rent charged to incoming residents.

Sandpiper alleges that the ordinance unconstitutionally "prevents plaintiff from raising rents to market levels upon sale or other transfer of a unit

---

[1]All future references to the rent control ordinance are to City of Carpinteria's Ordinance No. 371 readopting its Ordinance No. 287 which readopts chapter 5.69 of the Carpinteria Municipal Code.

. . . ." Sandpiper states: "The application of the Rent Control Ordinance to plaintiff results in enabling the tenants to monetize the rent savings upon the sale of their mobile homes to third parties," which "constitutes an impermissible transfer of wealth by the defendant to the departing tenants in violation of California Constitution, Article I, § 19."[2]

Sandpiper also asserts the ordinance is irrational and serves no legitimate governmental purpose to preserve low or affordable housing because it enables departing tenants to sell their mobilehomes for a premium.

Sandpiper alleges that Carpinteria's ordinance "has had the effect of depriving the plaintiff of all use and occupancy of its real property in the spaces occupied by tenants, except a greatly reduced income stream, and granting to the tenants . . . the right to physically permanently occupy and use the real property of plaintiff at reduced rentals." Sandpiper cites *Hall* v. *City of Santa Barbara* (9th Cir. 1986) 833 F.2d 1270, to support its position that the ordinance exacts a physical taking of its property.

Sandpiper states that "[t]he tenants . . . have used [their] power and ability on many occasions, to sell the rights of use and occupancy of plaintiff's real property at reduced rentals, which have been transferred to . . . tenants by operation and enforcement of the Rent Control Law . . . ."

## DISCUSSION

### *Physical Taking*

■ Sandpiper argues that enforcement of this ordinance constitutes a physical taking of its property because it transfers the right to market rents from the park owner to the tenants who obtain a premium for the sale of their coaches in the rent controlled park. (*Hall* v. *City of Santa Barbara, supra,* 833 F.2d 1270; accord *Pinewood Estates* v. *Barnegat Tp. Leveling Bd.* (3d Cir. 1990) 898 F.2d 347.) Carpinteria contends that its rent control ordinance is a constitutional economic regulation which does not exact a per se physical taking. (*Yee* v. *City of Escondido* (1990) 224 Cal.App.3d 1349 [274 Cal.Rptr. 551], affd. *Yee* v. *Escondido, supra,* 503 U.S. __ [118 L.Ed.2d 153]; *Casella* v. *City of Morgan Hill, supra,* 230 Cal.App.3d 43.)

During the pendency of this appeal the United States Supreme Court issued its opinion in *Yee, supra,* a case very similar to this one. The Supreme

---

[2]Article I, section 19 reads, in pertinent part, that "[p]rivate property may be taken or damaged for public use only when just compensation . . . has first been paid to . . . the owner."

Court held that "[o]n their face, the state and local laws at issue here merely regulate petitioners' *use* of their land . . . ." (*Yee* v. *Escondido, supra,* 503 U.S. at p. __ [118 L.Ed.2d at p. 166].) The high court stated that "no government has required any physical invasion" of a park owner's property. (*Id.* at p. __ [118 L.Ed.2d at p. 165].) The Supreme Court stated that "[t]he government effects a physical taking only where it *requires* the landowner to submit to the physical occupation of his land." (*Ibid.,* italics in text.) On their face, these laws do not compel a park owner to continue renting his or her property to tenants, therefore they do not require compensation, per se. (*Ibid.*)

The *Yee* court also rejected the contention that because the ordinance transfers wealth from park owners to incumbent tenants a physical invasion occurs. (*Yee* v. *Escondido, supra,* 503 U.S. at p. __ [118 L.Ed.2d at p. 167].) The high court explained that no physical taking occurs regardless of "[w]hether the ordinance benefits only current mobile home owners or all mobile home owners . . . ." (*Ibid.*)

Furthermore, a park owner is not entitled to compensation for a physical taking because of the inability to choose incoming tenants. (*Yee* v. *Escondido, supra,* 503 U.S. at p. __ [118 L.Ed.2d at p. 167].) The landowner still retains a number of choices. As in *Yee,* Sandpiper voluntarily rents its land to tenants. (*Ibid.*) Under the State Mobilehome Residency Law, a park owner is entitled to change the use of his land by evicting his tenants with six or twelve months' notice. (*Id.,* at p. __ [118 L.Ed.2d at p. 165]; Civ. Code, § 798.56, subd. (g).)

Sandpiper, like *Yee,* fails to establish a physical taking "because there has simply been no compelled physical occupation giving rise to a right to compensation . . . ." (*Yee* v. *Escondido, supra,* 503 U.S. at p. __ [118 L.Ed.2d at p. 168]; *FCC* v. *Florida Power Corp.* (1987) 480 U.S. 245 [94 L.Ed.2d 282, 107 S.Ct. 1107].)

### Substantive Due Process

Sandpiper alleges that "the Ordinance is irrational and . . . does not serve a legitimate governmental purpose of preserving low or affordable housing," because it enables tenants to sell their mobilehomes at premiums thereby "burdening the space with the need to pay the additional premium."

California courts have previously upheld such rent control provisions as legitimate, rational exercises of the police power because they are " 'reasonably calculated to eliminate excessive rents and at the same time provide

landlords with a just and reasonable return on their property.' [Citation.]" (*Casella* v. *City of Morgan Hill, supra,* 230 Cal.App.3d at p. 56.)

In readopting its 1980 rent stabilization ordinance, the extending ordinance stated that "said Chapter . . . has proven to be an effective and beneficial program for the people of Carpinteria . . . ." (City of Carpinteria Ord. No. 371.) It is not our role to second-guess this legislative determination. (*Casella* v. *City of Morgan Hill, supra,* 230 Cal.App.3d at p. 52, and see pp. 51-54, 56-57.)

Sandpiper argues that the premium received by tenants upon the sale of their mobilehomes "is one that otherwise could be sold by the park owner plaintiffs, in the process of negotiating a long-term lease with a new tenant . . . ." It further argues that although this premium is exempt from rent control, it provides the tenant with long-term security and usually a reduced rent. California property law, however, "considers leasehold value the property of the tenant, not the landlord. [Citations.]" (*Casella* v. *City of Morgan Hill, supra,* 230 Cal.App.3d at p. 55.)

The regulation of rent in a scarce housing market is a public policy matter to be determined by the Legislature. (*Casella* v. *City of Morgan Hill, supra,* 230 Cal.App.3d at p. 57; see also *Carson Mobilehome Park Owners' Assn.* v. *City of Carson* (1983) 35 Cal.3d 184, 189, fn. 4 [197 Cal.Rptr. 284, 672 P.2d 1297].) The ordinance here is constitutional.

### Regulatory Taking as Applied

"On their face, the state and local laws at issue here merely regulate petitioners' *use* of their land by regulating the relationship between landlord and tenant." (*Yee* v. *Escondido, supra,* 503 U.S. at p. ___ [118 L.Ed.2d at p. 166], italics in text.) ■ The Supreme Court has admonished that " 'the constitutionality of statutes ought not be decided except in an actual factual setting that makes such a decision necessary.' " (*Pennell* v. *San Jose* (1988) 485 U.S. 1, 10 [99 L.Ed.2d 1, 13, 108 S.Ct. 849]; and see *Williamson Planning Comm'n* v. *Hamilton Bank* (1985) 473 U.S. 172, 190 [87 L.Ed.2d 126, 141, 105 S.Ct. 3108], referring to *Hodel* v. *Virginia Surface Min. & Recl. Assn.* (1981) 452 U.S. 264 [69 L.Ed.2d 1, 101 S.Ct. 2352], *Agins* v. *Tiburon, supra,* 447 U.S. 255, and *Penn Central Transp. Co.* v. *New York City* (1978) 438 U.S. 104 [57 L.Ed.2d 631, 98 S.Ct. 2646].) Whether a regulation constitutes a taking depends on such factors as the "economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations. [Citations.] Those factors simply cannot be evaluated until the administrative agency has arrived at a final, definitive

position regarding how it will apply the regulations at issue to the particular land in question." (*Willamson Planning, supra,* 473 U.S. at p. 191 [87 L.Ed.2d at p. 141].) To determine whether a regulatory taking has occurred, statutory regulations must be analyzed by engaging in " 'essentially ad hoc, factual inquiries.' " (*Yee* v. *Escondido, supra,* 503 U.S. at p. __ [118 L.Ed.2d at p. 166], quoting *Kaiser Aetna* v. *United States* (1979) 444 U.S. 164, 175 [62 L.Ed.2d 332, 343, 100 S.Ct. 383].) Because Sandpiper has not alleged that it has attempted to change the use of its park or to apply for rent increases, its regulatory taking claim is not ripe. (*Yee , supra,* 503 U.S. at p. __ [118 L.Ed.2d at p. 169].)

*Facial Challenge*

Sandpiper's complaint does not challenge the ordinance on its face. In its supplemental brief to this court filed after the United States Supreme Court decided *Yee,* Sandpiper argues that the ordinance does not substantially advance a legitimate governmental interest no matter how the ordinance is applied. Because this assertion "does not depend on the extent to which petitioners are deprived of the economic use of their particular pieces of property or the extent to which these particular petitioners are compensated, petitioners' facial challenge is ripe." (*Yee* v. *Escondido, supra,* 503 U.S. at p. __ [118 L.Ed.2d at p. 169]; see also *Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644, 654, fn. 3 [209 Cal.Rptr. 682, 693 P.2d 261], affd. *Fisher* v. *Berkeley* (1986) 475 U.S. 260 [89 L.Ed.2d 206, 106 S.Ct. 1045].)

Carpinteria claims that even if the issue is ripe for adjudication, the statute of limitations has run. We disagree. Carpinteria passed the ordinance at issue in April 1985 and Sandpiper filed its complaint on July 21, 1989. Sandpiper filed its complaint within the five-year statute of limitations applicable to the question of whether real property has been taken. (*Garden Water Corp.* v. *Fambrough* (1966) 245 Cal.App.2d 324, 327-328 [53 Cal.Rptr. 862]; Code Civ. Proc., § 319.)

■ The Supreme Court " '. . . has consistently affirmed that States have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular without paying compensation for all economic injuries that such regulation entails.' [Citations.] When a landowner decides to rent his land to tenants, the government may place ceilings on the rents the landowner can charge, (see, e.g., *Pennell* [v. *San Jose*], *supra,* [485 U.S. at p.] 12, fn. 6 [99 L.Ed.2d at p. 14]) . . . ." (*Yee* v. *Escondido, supra,* 503 U.S. __ at p. __ [118 L.Ed.2d at p. 166].)

In evaluating whether an ordinance on its face constitutes the taking of a landowner's property, the question is whether the ordinance substantially

advances a legitimate state interest in the public welfare. (*Nollan* v. *California Coastal Comm'n* (1987) 483 U.S. 825, 834 [97 L.Ed.2d 677, 687, 107 S.Ct. 3141]; *Agins* v. *Tiburon, supra,* 447 U.S. at p. 261 [65 L.Ed.2d at p. 112]; *Euclid* v. *Ambler Realty Co.* (1926) 272 U.S. 365, 395-397 [71 L.Ed. 303, 313-314, 47 S.Ct. 114].)

Vacancy control precludes park owners from raising rents immediately to new tenants. It is a form of rent control which courts have held to be a legitimate economic regulation. (*Casella* v. *City of Morgan Hill, supra,* 230 Cal.App.3d at p. 52.)

Sandpiper contends, however, that under the ordinance it "has no legal right to receive any compensation for the rights now enjoyed by the tenants of the park [i.e., the right to obtain a premium on sales] other than the stream of income from rents as regulated by the Rent Control Law."

Unless the regulatory ordinance denies the property owner substantially all economically "viable use of [the] land," there is no compensable taking. (*Agins* v. *Tiburon, supra,* 447 U.S. at p. 260 [65 L.Ed.2d at p. 111]; *Long Beach Equities, Inc.* v. *County of Ventura* (1991) 231 Cal.App.3d 1016, 1038 [282 Cal.Rptr. 877].) Assuming that Sandpiper's profit is severely reduced, the complaint fails to meet this test. "Even where there is a very substantial diminution in the value of land, there is no taking." (*Long Beach Equities, supra,* at p. 1036.)

The instant ordinance recognizes the need "to provide for a just and reasonable return to management in all foreseeable cases" and provides the means to ensure this. (Carpinteria Mun. Code, § 5.69.050.) In addition to the calculated automatic annual rent increases, the rent stabilization board "may adopt an adjustment to the effective rent schedule up to that required for a just and reasonable return . . . ." (*Ibid.*)

The management of a mobilehome park may, by verified petition, "also apply for a summary adjustment in the maximum rent based upon new added substantial cost for a specific service, tax or assessment or for a rapidly accelerating and substantial specific cost which has been imposed upon the mobile home park . . . ." (Carpinteria Mun. Code, § 5.69.050.) The ordinance provides, inter alia, for noncontested determinations, joint agreements for maximum rent, contested hearing and judicial review of its rent provisions.

California courts have previously upheld such rent control provisions as legitimate, rational exercises of the police power, because they are " 'reasonably calculated to eliminate excessive rents and at the same time provide

landlords with a just and reasonable return on their property.' [Citation.]" (*Casella* v. *City of Morgan Hill, supra*, 230 Cal.App.3d at p. 56.)

Sandpiper argues that under the *Nollan* test, *supra*, this ordinance does not substantially advance its purpose of maintaining low to moderate income housing. Sandpiper opines that vacancy control improperly shifts to tenants the owner's "right" to increase rents by enabling tenants to obtain premium prices for the sale of their coaches.

This ordinance meets the *Nollan* test. It substantially advances a legitimate state interest. It seeks to remedy an inequitable market situation caused by the scarcity of mobilehome sites. It seeks to protect mobilehome owners' investments, and also to provide park owners with a reasonable return on their investment.

Sandpiper argues that the ordinance does not accomplish its purpose because the high prices a new tenant pays for a mobilehome coach exceed the benefits the tenant derives from rent control.

In readopting its 1980 rent stabilization ordinance, however, the extending ordinance stated that "said Chapter . . . has proven to be an effective and beneficial program for the people of Carpinteria . . . ." (City of Carpinteria Ord. No. 371.)

This legislative determination states a sufficient nexus between the effect of the ordinance and the objectives it seeks to advance. (See *Nollan* v. *California Coastal Comm'n, supra*, 483 U.S. at p. 837 [97 L.Ed.2d at p. 689].) Under such circumstances, the manner in which Carpinteria desires to achieve its goal is a legislative question, not a judicial one.

The judgment is affirmed. Each side to bear its own costs.

Stone (S. J.), P. J., and Yegan, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 11, 1993. Baxter, J., did not participate therein. Lucas, C. J., was of the opinion that the petition should be granted.