109 Cal.Rptr.2d 407 (2001)
90 Cal.App.4th 796
CITY OF COTATI, Plaintiff and Appellant,
v.
Gene CASHMAN et al., Defendants and Respondents.
Nos. A092242, A092868.
Court of Appeal, First District, Division Two.
July 13, 2001.
Review Granted October 17, 2001.
*408 Endeman, Lincoln, Turek & Heater, Donald R. Lincoln, Henry E. Heater, San Diego, Walter & Pistole, Jeffrey A. Walter, Sonoma, for Appellant.
Pacific Legal Foundation, R.S. Radford, Meriem L. Hubbard, Sacramento, Harold E. Johnson, for Respondents.
RUVOLO, J.

I.
The City of Cotati (Cotati) appeals after a special motion to strike its lawsuit was granted pursuant to the Strategic Lawsuit Against Public Participation (SLAPP) statute. (Code of Civ. Proc., § 425.16.)[1] The *409 special motion to strike was brought by respondents Gene Cashman, Athena Sutsos, and Elizabeth White (collectively, respondents), who claimed Cotati's lawsuit was brought primarily to chill respondents' valid exercise of constitutional rights of freedom of speech and petition for the redress of grievances. The trial court agreed, and after striking Cotati's complaint, assessed attorney fees and costs against Cotati as authorized by section 425.16, subdivision (c).
We reverse, concluding that Cotati's complaint did not fall within the SLAPP statute. Additionally, Cotati showed a reasonable likelihood of prevailing on the merits. Therefore, the motion, including the request for attorney fees and costs, should have been denied by the trial court. We likewise reverse the award of sanctions imposed on Cotati for filing a motion to reconsider below. Last, we deny respondents' motion to dismiss this appeal and impose sanctions on Cotati.

II.
This action concerns the passage of City Ordinance No. 680 (Ordinance 680),[2] which established a mobilehome park rent stabilization program in Cotati. Several months after the adoption of Ordinance 680, respondents, who are owners of mobilehome parks, filed an action against Cotati in United States District Court, Northern District of California (federal court), seeking declaratory relief, injunctive relief, and damages resulting from the passage of Ordinance 680. Alleging the existence of an "actual controversy" between respondents and Cotati arising under federal law, respondents invoked the Fifth and Fourteenth amendments to the United States Constitution and 42 U.S.C. § 1983 to challenge the legality of Ordinance 680. As to the declaration of rights to be determined in this federal action, respondents described it as: "Whether [Cotati] effects an uncompensated regulatory taking by implementing and enforcing the rent-restriction Ordinance, in violation of the Fifth and Fourteenth Amendments to the United States Constitution."
On October 7, 1999, Cotati filed its complaint in Sonoma County Superior Court alleging a single cause of action for declaratory relief against respondents. In Paragraph 8 of the complaint, Cotati asserted that "[a]n actual controversy has arisen and now exists between [Cotati] and [respondents]" relative to the question of whether Ordinance 680 violates the Fifth and Fourteenth Amendments to the federal constitution. Cotati alleged, on information and belief, that respondents "also contend that said ordinance effects a taking in violation of the California Constitution." The prayer requested a declaration that the ordinance, facially and as applied to respondents, was constitutional and valid. Costs of suit were also prayed.
Shortly thereafter, respondents moved to strike Cotati's complaint, claiming that the filing of the state court complaint was subject to a special motion to strike under section 425.16, the anti-SLAPP statute. The motion also sought attorney fees and costs against Cotati. In their motion, respondents urged that the filing of the state *410 court action arose out of the filing of their earlier federal action, and as such, violated subdivision (a) of the anti-SLAPP statute. They also pointed out that their federal complaint did not ground itself on any claim under the California Constitution, and that the causes of action were specifically limited to claims under federal law. Instead, relief in federal court was pursued under authority of a Ninth Circuit case, Richardson v. City and County of Honolulu (9th Cir.1997) 124 F.3d 1150, which respondents contended "held that ordinances of the type at issue in [respondents'] federal lawsuit are facially unconstitutional under the Fifth Amendment...."
As evidence in support of their argument that Cotati's state court action was a SLAPP suit, respondents noted that the day after the state court action was filed, Cotati filed a motion to dismiss the federal court action invoking the abstention doctrine. Under the abstention doctrine, federal courts will abstain from deciding questions presented if there is a pending state court proceeding in which the same important state interests are at stake, and where the state forum can adequately resolve any federal questions raised. (Younger v. Harris (1971) 401 U.S. 37, 401 U.S. 37, 27 L.Ed.2d 669.) Cotati did not, and does not, deny that state decisions were more favorable to its position in the underlying dispute. (See Montclair Parkowners Assn. v. City of Montclair (1999) 76 Cal. App.4th 784, 90 Cal.Rptr.2d 598 (Montclair); Sandpiper Mobile Village v. City of Carpinteria (1992) 10 Cal.App.4th 542, 12 Cal.Rptr.2d 623 (Sandpiper).) Nor does it deny that the filing of its state court action was a prelude to its motion to dismiss the federal action on abstention grounds. Therefore, because it was likely the federal court would follow Richardson, Cotati concedes that the sole purpose in filing the state court action was to enable it potentially to gain a more favorable state court forum in which to litigate the constitutionality of Ordinance 680. In respondents' words, "Cotati sued the park owners [in state court] to `constructively remove' park owners' lawsuit from federal to state court."
However, if this was Cotati's strategy, it was thwarted. On January 25, 2000, the federal court issued an order denying Cotati's request to dismiss respondents' federal court action. The court noted that it need not abandon jurisdiction simply because Cotati filed a similar suit in state court after respondents' lawsuit was filed in federal court. The court held: "`Younger abstention principles do not require federal courts to forego the exercise of their jurisdiction to decide a federal constitutional question under the Declaratory Judgment Act whenever a state prefers to litigate the question of declaratory relief in state court. (Polykoff v. Collins (9th Cir. 1987) 816 F.2d 1326, 1333.)"' Judgment was ultimately entered in the federal action for respondents against Cotati.[3]
*411 With regard to respondents' special motion to strike Cotati's state lawsuit under section 425.16, the anti-SLAPP remedy, the trial court issued a five-page written ruling on February 2, 2000. It concluded that the state action involved the "exact" contention made by respondents in the first cause of action in the federal complaint, and that respondents had satisfied their burden of proving that the filing of the state court action "arose out of the [respondents'] right of petition under the U.S. Constitution as defined in [section] 425.16."
Noting that this finding shifted the burden to Cotati to prove that it had a reasonable probability of succeeding on the merits of its complaint, the court then examined the materials presented "recognizing] that [Cotati's] burden herein is similar to the standard applied to the evidentiary showing in a summary judgment motion...." In doing so, the court concluded that Cotati had failed to present any evidence of "an actual controversy between the parties," particularly that there was an actual controversy between the parties as it related to the constitutionality of Ordinance 680 under the California Constitution. It also based its ruling on a finding that Cotati could not prevail in its state court action "because of the litigation privilege contained in Civil Code [section] 47," relying on Rubin v. Green (1993) 4 Cal.4th 1187, 1193, 17 Cal.Rptr.2d 828, 847 P.2d 1044. Accordingly, the motion to strike was granted.
A motion to reconsider was filed by Cotati accompanied by supplemental materials including a comparative study of Ordinance 680 and the ordinance under examination in Montclair, supra, 76 Cal. App.4th 784, 90 Cal.Rptr.2d 598. The filing of this motion stimulated the filing of a motion for sanctions by respondents pursuant to sections 128.7 and 1008, subdivision (d).
On June 1, 2000, the trial court denied the motion to reconsider and ordered that judgment be entered in favor of respondents. The order also awarded respondents their attorney fees and costs pursuant to section 415.16, subdivision (c). Respondents then filed an application for attorney fees on June 19, 2000, seeking a total of $105,518.50.
On July 14, 2000, sanctions in the amount of $2,000 were awarded to respondents, and Cotati was ordered to make payment within 20 days. On August 30, 2000, attorney fees of $35,000 and costs of $489.91 were awarded to respondents pursuant to section 415.16, subdivision (c). Cotati appealed both from the final judgment, including the award of sanctions (Case No. A092242), and separately from the award of attorney fees (Case No. A092868).

III.

A.
Section 425.16, California's anti-SLAPP statute, is quite obviously at the heart of this dispute. Enacted in 1992, the statute was in direct response to a growing legislative concern for tactical lawsuits designed, not to adjudicate rights or grievances, but to delay, obstruct or "chill" the exercise of First Amendment rights of free speech and petition of others. This concern is embedded in the present text of the statute itself: "The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, *412 and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly." (§ 425.16, subd. (a).)
Following this preamble, the statute sets forth a remedy for those whose First Amendment rights have been suppressed by the pernicious use of the judicial process. Subdivision (b)(1) of section 425.16 provides in pertinent part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." The balance of the statute goes on to describe the procedure for contesting whether a proceeding has been initiated in violation of the statute, and if so, how monetary penalties are to be assessed. (See generally Briggs v. Eden Council for Hope & Opportunity (1999) 19 Cal.4th 1106, 81 Cal.Rptr.2d 471, 969 P.2d 564 (Briggs).)
In reviewing a judgment of dismissal following the grant of a special motion to strike pursuant to section 425.16, we use our independent judgment to determine if respondents have met their initial burden of establishing a prima facie showing that Cotati's lawsuit arose from respondents' free speech or petition activity. (Kyle v. Carmon (1999) 71 Cal.App.4th 901, 907, 84 Cal.Rptr.2d 303.) If respondents establish a prima facie case, then the burden shifts to Cotati to establish a probability that it will prevail on its claim, i.e., make a prima facie showing of facts which would, if proved at trial, support a judgment in Cotati's favor. (Ibid.; see also Dowling v. Zimmerman (2001) 85 Cal.App.4th 1400, 1417, 103 Cal.Rptr.2d 174.)

B.
"The paradigm SLAPP is a suit filed by a large land developer against environmental activists or a neighborhood association intended to chill the defendants' continued political or legal opposition to the developers' plans. [Citations.] SLAPP's, however, are by no means limited to environmental issues [citations]____ [¶] The favored causes of action in SLAPP suits are defamation, various business torts such as interference with prospective economic advantage, nuisance and intentional infliction of emotional distress. [Citations.] Plaintiffs in these actions typically ask for damages which would be ruinous to the defendants. [Citations.] [¶] SLAPP suits are brought to obtain an economic advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff. [Citations.] ... [¶] [W]hile SLAPP suits `masquerade as ordinary lawsuits' the conceptual features which reveal them as SLAPP's are that they are generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so. [Citation.]" (Wilcox v. Superior Court (1994) 27 Cal. App.4th 809, 815-816, 33 Cal.Rptr.2d 446, italics and fn. omitted.)
The accuracy of the Wilcox court's description of the quintessential SLAPP suit is confirmed by many of the reported cases decided under the statute. (See Braun v. Chronicle Publishing Co. (1997) 52 Cal. App.4th 1036, 61 Cal.Rptr.2d 58 [defamation action filed by director of research and training center at state university after publication of articles stemming from allegations of mismanagement of center]; Dove Audio, Inc. v. Rosenfeld, Meyer & Susman (1996) 47 Cal.App.4th 777, 54 Cal. Rptr.2d 830 [defamation action based on letters soliciting support for attorney general *413 investigative activities into conduct of plaintiff]; Lafayette Morehouse, Inc. v. Chronicle Publishing Co. (1995) 37 Cal. App.4th 855, 860-861, 44 Cal.Rptr.2d 46 [libel action filed against newspaper by alternative lifestyle institution of higher learning]; Wilcox v. Superior Court, supra, 27 Cal.App.4th 809, 33 Cal.Rptr.2d 446 [defamation claims by trade association against non-member who publicly sought support to sue association].)
However, in 1997, the frontier of SLAPP advanced materially beyond this dense cluster of rather obvious cases, no doubt prodded by an amendment adding the Legislature's admonition that the statute "shall be construed broadly." (§ 425.16, subd. (a).) Also supporting the advance was the Supreme Court's decision in Briggs where it held that even private activities and statements are not removed from the protection of the anti-SLAPP statute if they are made in connection with an official proceeding. (Briggs, supra, 19 Cal.4th at p. 1113, 81 Cal.Rptr.2d 471, 969 P.2d 564.)
Emboldened by this trend in the law, and the important public policy it sponsors,[4] courts have continued the expansion of SLAPP doctrine into unexplored factual terrain. (See DuPont Merck Pharmaceutical Co. v. Superior Court (2000) 78 Cal. App.4th 562, 92 Cal.Rptr.2d 755 [class action brought against drug company for alleged false statements before regulatory agency subject to special motion to strike]; Sipple v. Foundation for Nat. Progress (1999) 71 Cal.App.4th 226, 83 Cal.Rptr.2d 677 [defamation action brought by political consultant on domestic violence following magazine articles published concerning the consultant's child custody court case with former spouse subject to SLAPP motion].) The feverish pace with which appellate courts are dispatching issues under this statute is decidedly not subsiding and may, in reality, be accelerating. Indeed, as of today, 10 new so-called SLAPP cases have been published since the first of this year.[5]
After briefing, counsel have brought to our attention two cases[6] in which the anti-SLAPP statute was considered in the context of litigation seeking declaratory relief. One is City of San Diego v. Dunkl (2001) 86 Cal.App.4th 384, 103 Cal.Rptr.2d 269 (Dunkl). In Dunkl, the City of San Diego and the owners of the San Diego Padres baseball team filed two actions for declaratory relief in reaction to citizen efforts to place an initiative on the ballot seeking to invalidate earlier action taken to develop a new ballpark. The lawsuits sought declarations that the circulating initiative was invalid and should not be placed on the ballot. (Id. at p. 388, 103 Cal.Rptr.2d 269.) The Fourth District affirmed summary judgment in favor of the plaintiffs. Because they had prevailed on their declaratory relief actions, the court concluded that defendants' SLAPP motion to strike was moot. (Id. at p. 389, 103 Cal.Rptr.2d 269.) Nevertheless, in declaring the motion *414 moot, in a single sentence, the court noted: "Finally, there was no improper interference with the proponents' First Amendment rights in the manner in which this litigation was carried out and resolved. (See Citizens for Responsible Behavior v. Superior Court [ (1991) 1 Cal.App.4th 1013] at pp. 1021-1022, 2 Cal.Rptr.2d 648.)" (Dunkl, supra, 86 Cal.App.4th at p. 403, 103 Cal.Rptr.2d 269.)[7]
The disparate cases striking pleadings on special motions under section 425.16 share a common feature despite their lack of factual similarity. In each, the litigation had the effect, if not the purpose,[8] of stifling the defendant's exercise of First Amendment rights. These were proceedings as defined by the statute which were "not to vindicate a legal right, but rather to interfere with the defendant's ability to pursue his or her interests.... [I]t will achieve its objective if it depletes defendant's resources or energy. The aim is not to win the lawsuit but to detract the defendant from his or her objective, which is adverse to the plaintiff. [Citation.]" Church of Scientology v. Wollersheim, supra, 42 Cal.App.4th at p. 645, 49 Cal. Rptr.2d 620.)
By contrast, the suit filed by Cotati did not have the effect of chilling respondents' right to petition for grievances. Indeed, it sought a judicial determination of the very question of constitutionality of Ordinance 680 prayed by respondents in federal court. Its only vice, if any, was to seek to have that issue determined in a different venue; a venue no more protracted, expensive, or inconvenient to respondents than their own chosen forum for this controversythe federal court in San Francisco.
Based on an independent review of the evidence, we conclude that respondents have failed to make a prima facie showing that Cotati's lawsuit chilled their First Amendment rights, as required by the statute. (People ex rel. 20th Century Ins. Co. v. Building Permit Consultants, Inc. (2000) 86 Cal.App.4th 280, 284, 103 Cal. Rptr.2d 71.) Were we to conclude otherwise, we would be encouraging and approving the use of SLAPP in virtually all disputes over jurisdiction and venue. This we will not do, for there is little to distinguish the procedural purpose and effect of Cotati's state court action from any attempt to dislodge a pending proceeding from a selected judicial forumsuch as by petitioning to remove a state court action to federal court, bringing a motion to remand to state court, attempting to enforce a forum selection clause (see Smith, Valentino & Smith, Inc. v. Superior Court (1976) 17 Cal.3d 491, 131 Cal.Rptr. 374, 551 P.2d 1206), filing an answer which challenges venue (§ 396), seeking a change of venue for convenience of the parties (§ 418.10, subd. (a)(2)), or attacking subject matter or personal jurisdiction (§ 418.10. subd. (a)(1)).
Accordingly, we conclude that respondents failed to satisfy their initial burden of proving that Cotati's state action was a SLAPP suit, subject to a motion to strike *415 under section 425.16. Therefore, it was error for the trial court to shift the burden to Cotati to prove it was likely to prevail on the merits. Instead, the special motion to strike should have been denied.

C.
Even if the trial court was correct in shifting the burden to Cotati to show there was a substantial likelihood that it would prevail in the state court declaratory relief action, we conclude that such a showing was made. We note initially that the trial court never addressed the constitutional issues pertaining to Ordinance 680 on their merits. Instead, the court concluded that Cotati could not succeed because respondents' decision to file a federal action was protected by the litigation privilege, relying on Rubin, supra, 4 Cal.4th at page 1193, 17 Cal.Rptr.2d 828, 847 P.2d 1044, and because there was no "actual controversy" between the parties as relating to the California statute.
We are at a loss to discern how Rubin applies here. The only similarity appears to be that Rubin involved a mobilehome park owner and a resident. There, the mobilehome park residents had complained without success about defects in the park's operations. One resident sent the mobilehome park owner a "notice of intention to commence action" on behalf of all residents warning of the residents' intention to file suit under a number of California and federal remedial laws. In response, a letter was sent by the owner's counsel to the resident and her counsel. While conciliatory in tone, the letter threatened that the owner would "`not tolerate such conduct and will seek compensation in the event of any loss'" to owner. (Rubin, supra, 4 Cal.4th at p. 1191, 17 Cal.Rptr.2d 828, 847 P.2d 1044.) A tort action was then filed by the owner against the resident and her counsel. The Supreme Court concluded that the action of counsel and the resident in sending its "notice" was immunized from tort liability by the litigation privilege embodied in Civil Code section 47, subdivision (b). (Id. at p. 1193, 17 Cal.Rptr.2d 828, 847 P.2d 1044.)
None of this is relevant to the state action in question. Cotati seeks no damages or other relief caused by the filing of respondents' federal action. Its action instead seeks an adjudication of the very legal questions placed in issue by respondents. For this simple reason the litigation privilege is not applicable to this dispute.
Rather, the trial court should have addressed the question of whether Cotati met its burden under section 425.16 of demonstrating a probability that it would prevail on the constitutional issues surrounding Ordinance 680. (See Briggs, supra, 19 Cal.4th at pp. 1115-1116, fn. 6, 81 Cal.Rptr.2d 471, 969 P.2d 564.) The test for determining the likelihood that Cotati will prevail on the merits of its action requires Cotati to "demonstrate the complaint is legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment." (Wilcox v. Superior Court, supra, 27 Cal.App.4th at p. 823, 33 Cal.Rptr.2d 446.)
We have already commented that the Ninth Circuit appears to have at least clarified Richardson v. City and County of Honolulu, supra, 124 F.3d 1150, by requiring a factual inquiry into whether a mobilehome park rent stabilization program such as Ordinance 680 furthers a substantial public interest. (Chevron USA Inc. v. Cayetano, supra, (9th Cir.2000) 224 F.3d 1030.) It also seems that the other two principal cases cited by Cotati decided under state law facially support its position on the underlying question. (Montclair, supra, 76 Cal.App.4th at p. 795, 90 Cal. Rptr.2d 598 [mobilehome park rent control *416 ordinance appears to be facially constitutional under California Constitution as not a compensable regulatory taking]; Sandpiper, supra, 10 Cal.App.4th at p. 542, 12 Cal.Rptr.2d 623 [same issue; as not a taking under either the federal or state constitutions either facially or as applied].)
The record includes the text of Ordinance 680, which is attached to Cotati's state court complaint. The text contains recitals as to the findings of Cotati which led to the enactment, and its purposes. In much abbreviated form, these findings include that: 1) mobilehome living provides important, low-cost alternative housing for Cotati residents; 2) Cotati has only three mobilehome parks within its geographical limits, which are populated by many elderly residents living on fixed incomes or lower income people generally; 3) the parks have essentially a zero percent vacancy rate, creating an environment which has allowed rents to increase unreasonably; 4) in the mid-1980s, under voluntary control programs, annual rent increases averaged four times the consumer price index (CPI) for Sonoma County, and after earlier rent controls were imposed, the rate increases requested were typically twice the approved rates which were in line with the CPI.
For these reasons, Ordinance 680 was proposed to: "(1) prevent exploitation of the shortage of vacant mobilehome park spaces; [¶] (2) prevent excessive and unreasonable mobilehome park space rent increases; [¶] (3) rectify the disparity of bargaining power which exists between mobilehome park residents and mobilehome park owners; [¶] (4) provide mobilehome park owners with a guaranteed rate of annual space rent increase which accurately reflects the rate of inflation and increases in their expenses; [¶] (5) provide a process for ensuring mobilehome park owners a fair, just and reasonable rate of return on their parks in cases where the guaranteed annual space rent increase provided by this chapter proves insufficient; [¶] (6) provide continued rent control through the transfer of a mobilehomeon-site (i.e. on the mobilehome pad) to a new mobilehome owner to prevent exploitative rental increases which take place when vacancy decontrol is either in effect or practiced by park owners; [and] [¶] (7) provide options in the duration of tenancies to prospective mobilehome tenants to prevent oppressive adhesion contracts from being imposed upon new park tenants."
At this stage we safely conclude that Cotati has made a prima facie showing that Ordinance 680 furthers a legitimate and substantial public interest. Therefore, even were the trial court correct in shifting the burden to Cotati to make a showing of a probability of prevailing on its claim, the record supports that it met its burden.

IV.
In sum, we conclude from our independent review that it would be an "overbroad application of the anti-SLAPP mechanism" to apply it to the instant case, because Cotati's state action was not brought primarily to chill respondents' valid exercise of their constitutional rights and was not an abuse of the judicial process. (Briggs, supra, 19 Cal.4th at pp. 1122-1123, 81 Cal.Rptr.2d 471, 969 P.2d 564.) A legitimate dispute exists between the parties over the constitutionality of Ordinance 680. Cotati's complaint herein is nothing more than an effort to obtain what it considers to be a more favorable forum for resolution of the disputed issues. Each party is utilizing the federal and state judicial systems in a permissible manner to achieve their respective goals. Accordingly, the complaint is not subject to section 425.16.

*417 V.
The judgment of dismissal is vacated, as are the awards of attorney fees, costs, and sanctions made to respondents by the trial court. This case is remanded for further proceedings consistent with this opinion. Costs on appeal are awarded to Cotati.[9]
KLINE, P.J., and LAMBDEN, J., concur.
NOTES
[1] Code of Civil Procedure section 425.16, subdivision (a) permits courts to strike a so-called SLAPP suit, "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances" (ibid.), "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim" (id. at subd. (b)). By authorizing a "special motion to strike," the statute offers "an economical and expeditious remedy" to defendants in SLAPP suits. (Church of Scientology v. Wollersheim (1996) 42 Cal.App.4th 628, 647, fn. 3, 49 Cal.Rptr.2d 620.) All further undesignated statutory references are to the Code of Civil Procedure unless otherwise noted.
[2] Ordinance 680 added Chapter 19.14 to the Cotati Municipal Code.
[3] Cotati has filed a post-briefing motion requesting us to take judicial notice of an order in the federal action filed after the federal court entered judgment for respondents and against Cotati. This order purports to grant Cotati's request for a memorandum opinion, pursuant to Federal Rules of Civil Procedure, rule 60(b), indicating an intention to vacate the amended judgment entered against Cotati if the matter is transferred back to the district court by the Ninth Circuit, where it is currently reposed on appeal. The federal court's apparent change of mind results from a new Ninth Circuit decision in Chevron USA, Inc. v. Cayetano (9th Cir.2000) 224 F.3d 1030, which clarifies Richardson, as allowing for ordinances such as Ordinance 680 unless respondents prove that the ordinance does not substantially further a legitimate state interest. We grant the request for judicial notice. (Evid.Code, § 452, subd. (d).)
[4] Braun, Increasing SLAPP Protection: Unburdening the Right of Petition in California (1999) 32 U.C. Davis L.Rev. 965; Shapiro and Tillman, Reducing the Cost of Free Expression, Call for Fee Shifting in Cases Challenging Freedom of Expression (1995) 17 Hastings Comm. & Ent.L.J. 571.
[5] Three of these cases were cited to us by Cotati's counsel in a letter just before oral argument. (Fox Searchlight Pictures v. Paladino (2001) 89 Cal.App.4th 294, 106 Cal. Rptr.2d 906; Rosenaur v. Scherer (2001) 88 Cal.App.4th 260, 105 Cal.Rptr.2d 674; and Paul for Council v. Hanyecz (2001) 85 Cal. App.4th 1356, 102 Cal.Rptr.2d 864). However, none bears on the precise issue we are asked to address.
[6] The California Supreme Court has granted review in the other case (Equilon Enterprises v. Consumer Cause, Inc., review granted Apr. 11, 2001, S094877).
[7] The case relied on for this dictum, Citizens for Responsible Behavior v. Superior Court (1992) 1 Cal.App.4th 1013, 2 Cal.Rptr.2d 648, was obviously not a SLAPP case as it was decided before the statute was enacted. The citation relates to a passage in that case only stating that the use of writ proceedings to resolve ballot disputes which are imminent is proper. No other explanation or authority for the Dunkl court's conclusory statement is offered.
[8] The issue under review by the Supreme Court in Equilon is whether the defendant attacking a pleading by special motion to strike must prove the plaintiff intended to chill the defendant's First Amendment rights by filing the offending pleading.
[9] In light of our reasoning and disposition, respondents' motion to dismiss the appeal and for sanctions, which we deferred for decision, is denied.