90 Cal.Rptr.2d 598 (1999)
76 Cal.App.4th 784
MONTCLAIR PARKOWNERS ASSOCIATION et al., Plaintiffs and Appellants,
v.
CITY OF MONTCLAIR, Defendant and Respondent.
No. E024137.
Court of Appeal, Fourth District, Division Two.
December 2, 1999.
Review Denied March 15, 2000.[**]
*599 Hart, King & Coldren, Robert S. Coldren, C. William Dahlin and Keith W. Carlson, Santa Ana, for Plaintiffs and Appellants.
Robbins & Holdaway, Diane E. Robbins, Richard Holdaway, Chino; Endeman, Lincoln, Turek & Heater, Donald R. Lincoln, Henry E. Heater and Linda B. Reich, San Diego, for Defendant and Respondent.
Certified for Partial Publication.[*]

OPINION
McKINSTER, Acting P.J.
Plaintiffs Montclair Parkowners Association and Hacienda Mobile Home Association (hereafter, "Park Owners") seek to invalidate ordinance No. 98-777, enacted by the City of Montclair (hereafter, "City"), on the grounds that it is unconstitutional on its face. Ordinance No. 98-777 was enacted to amend the existing rent control ordinance. Park Owners contend that enactment of the ordinance resulted in a regulatory taking of their property without just compensation in violation of article I, section 19, of the California Constitution. The trial court sustained City's demurrer on the ground that ordinance No. 98-777 was facially constitutional and dismissed the entire case against City.
In the published portion of the opinion (pt. I), we conclude that ordinance No. 98-777 on its face is not an unconstitutional regulatory taking. In our view, the relevant inquiry into the constitutionality of ordinance No. 98-777 under article I, section 19 of the California Constitution is whether the ordinance is an arbitrary regulation of Park Owners' property rights. Since City could have reasonably concluded that the limitation on Park Owners' ability to raise the rent upon sale of mobile homes would (1) protect the current mobile home owners' equity in the homes, and (2) protect prospective mobile home owners from excessive rent increases, it is not a compensable taking under the California Constitution.
In the unpublished portion of the opinion (Part II), we conclude that the trial court did not abuse its discretion in denying leave to amend the complaint.

FACTUAL AND PROCEDURAL BACKGROUND

A. History of City's Rent Control Ordinance

Prior to 1998, City had an existing rent control ordinance. According to that ordinance, Park Owners were free to adjust the rental rate for the mobile home space in the park upon sale of the mobile home or other voluntary transfer of ownership in the mobile home unless the transfer was made to a family member by gift, contract, or otherwise. However, according to a study commissioned by City in 1998, the existing rent control ordinance lost some of its effectiveness because Park Owners *600 routinely required prospective mobile home owners to sign long-term rental agreements or leases that were exempt from local rent control ordinances pursuant to Civil Code section 798.17 ("the mobile home residency statute"). As a result, the current mobile homeowners' ability to sell their mobile homes was significantly impaired because many prospective mobile home owners were discouraged from buying by the prospect of paying higher market level rental rates.
Furthermore, according to the study, the limitation on the ability to sell the mobile homes resulted in a higher number of the homes being abandoned, which caused an increasing number of the mobile homes to be placed in the hands of Park Owners. Thus, Park Owners were, in a sense, competing with existing mobile home owners in selling the mobile homes. According to the study, although antitrust laws would bar Park Owners from requiring prospective mobile home owners to purchase their mobile homes from Park Owners as a condition of residence at the park, nothing would preclude Park Owners from giving rent preferences to those individuals that bought their mobile homes from Park Owners. Also, the study noted the peculiar nature of mobile homes, particularly their low mobility, as a factor in favor of amending the ordinance, since the cost of moving a mobile home from place to place was prohibitive. Therefore, the study concluded that City's rent control ordinance's existing vacancy decontrol provision should be replaced with a vacancy control provision in order to (1) protect existing mobile home owners from excessive rents and preserve equity in their mobile homes, and (2) protect prospective mobile home owners from excessive rent increases. The existing vacancy decontrol provision allowed Park Owners unlimited space rent increases when a mobile home was sold in place. The proposed vacancy control provision would prohibit Park Owners from adjusting the space rent to market level when a mobile home is sold in place.
When a concern arose that the proposed ordinance would not accomplish its stated legislative purpose, a supplemental report was issued. The report addressed the argument that any benefit created by the proposed vacancy control provision would be captured only by the existing mobile home owners because lower rent-controlled space-rental rates would allow them to sell their mobile homes at higher prices. However, the report concluded that, in light of the data collected from neighboring cities with similar rent control ordinances, any potential increase in sale prices of mobile homes would be more than offset by low rental rates. Also, prospective mobile home owners would be able to benefit from the higher equity retained in the mobile homes once they bought them.
On June 20, 1998, City enacted City of Montclair Ordinance No. 98-777 (Ordinance No. 98-777). The stated legislative goal of the ordinance was to "(1) protect current home owner's investment in their mobile homes by precluding park owners from (a) requiring prospective mobile home owners to sign a long-term lease therefore adversely effecting [sic] sales of mobile homes and (b) raising space rents upon sale or transfer of a mobile home in a park." (Ord. No. 98-777, § 5-19.01, subd. (H).) Moreover, the ordinance's aim was to "protect prospective mobile home owners from excessive rents by providing (a) for lease options in order to give each prospective home owner a real choice between an exempt long-term lease and a lease subject to the protections of the Ordinance; and (b) that a park owner may not raise space rents upon the sale or transfer of a mobile home in a park." (Ibid.) Finally, the ordinance was designed to "protect prospective homeowners' future investments in their mobile homes by precluding park owners from (a) affecting a future sale of such mobile homes through a long-term lease requirement imposed upon the subsequent *601 purchasers and (b) raising space rents upon sale or transfer of a mobile home in a park." (Ibid.)
Section 5-19.06 of the newly enacted ordinance limits Park Owners' ability to raise space rental rates upon sale or transfer of ownership of a mobile home to the greater of: (a) three percent; or (b) one hundred percent of the most current annual CPI (consumer price index) percentage increase, up to a maximum of eight percent. Section 5-19.09 allows Park Owners to make an administrative application to increase rental rates above the limitations imposed by the ordinance based on increases in land lease payments made by Park Owners, certain taxes and making of capital improvements. The application for rent increase must be made to the Rent Review Administrator. (Ord. No. 98-777, § 5-19.09, subd. (A).) Any adverse determination on the application for rent increase can be appealed to the City Council, and a subsequent judicial review of the City Council's decision can be made via a petition for a writ of administrative mandate. (Ord. No. 98-777, § 5-19.09, subd. (F).)
In addition to any rent increase allowed pursuant to section 5-19.09, Park Owners may seek permission to increase space rent by submitting an application to the Park Mediation Committee (hereafter, "Committee"). (Ord. No. 98-777, § 5-19.10, subds. (A) and (B).) The Committee shall consist of two representatives from Park Owners, two representatives from the spaces affected by the proposed rent increase, and one mediator appointed by the Rent Review Administrator. (Ibid.)
If the Committee fails to reach an agreement on the application, Park Owners may also apply for a rent increase through arbitration. (Ord. No. 98-777, § 5-19.11.) Park Owners are permitted to employ legal counsel and present physical and testimonial evidence in support of their application. (Ord. No. 98-777, § 5-19.11, subd. (F).) The ordinance provides a non-exclusive list of factors on which the arbitrator may rely in reaching his or her decision. (Ord. No. 98-777, § 5-19.11, subd. (G).) Any adverse decision by the arbitrator is not binding and can be appealed to the City Council. (Ord. No. 98-777, § 5-19.12.) Park Owners may obtain judicial review of any adverse decision by City Council by seeking a writ of administrative mandate. (Ord. No. 98-777, § 5-19.13.)

B. Procedural History of This Litigation

On August 18, 1998, Park Owners filed a complaint against City in the superior court. It contained the following counts: (1) A declaratory relief cause of action re: facial constitutionality of the rent control ordinance;[1] (2) A request for temporary and permanent injunctive relief on the grounds that the ordinance was facially unconstitutional, and its enforcement would result in irreparable harm; and (3) An inverse condemnation claim that alleged that enactment of the ordinance resulted in a regulatory taking of Park Owners' property without compensation.
City demurred to the entire complaint. The trial court ruled that the ordinance was facially constitutional and sustained City's demurrer to the entire complaint without leave to amend. Park Owners timely appealed.

DISCUSSION
"A demurrer tests the legal sufficiency of the complaint, ..." (Hernandez v. City of Pomona (1996) 49 Cal.App.4th 1492, 1497, 57 Cal.Rptr.2d 406; Sargoy v. Resolution Trust Corp. (1992) 8 Cal. App.4th 1039, 1041, 10 Cal.Rptr.2d 889.) On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a *602 matter of law. (Moore v. Regents of University of California (1990) 51 Cal.3d 120, 125, 271 Cal.Rptr. 146, 793 P.2d 479.) We deem to be true all material facts properly pled (Serrano v. Priest (1971) 5 Cal.3d 584, 591, 96 Cal.Rptr. 601, 487 P.2d 1241) and those facts that may be implied or inferred from those expressly alleged (Marshall v. Gibson, Dunn & Crutcher (1995) 37 Cal. App.4th 1397, 1403, 44 Cal.Rptr.2d 339).
While a decision to sustain or overrule a demurrer is subject to de novo review on appeal, a grant or denial of leave to amend calls for an exercise of discretion on the part of the trial court. (Hernandez v. City of Pomona, supra, 49 Cal.App.4th at p. 1497, 57 Cal.Rptr.2d 406.) Denial of leave to amend is reviewed for abuse of discretion. (Aubry v. Tri-City Hospital Dist. (1992) 2 Cal.4th 962, 967, 9 Cal. Rptr.2d 92, 831 P.2d 317.) The trial court abuses its discretion in denying leave to amend only if the plaintiff shows a reasonable possibility of curing any defect by amendment. (Ibid.)

I

Constitutionality of Ordinance No. 98-777
Park Owners contend that Ordinance No. 98-777 is unconstitutional because it does not substantially advance a legitimate government interest and deprives Park Owners of all economically beneficial use in their property.[2] City responds that the stated legislative purposes of the ordinance, protection of the current mobile home owners' investment in their homes and protection of prospective mobile home owners from excessive rents, are legitimate government interests. City further argues that the ordinance accomplishes its stated legislative purposes by prohibiting Park Owners from adjusting rental rates to the market level upon sale or transfer of ownership of a mobile home. City points out that lower rental rates protect the current mobile home owners' equity in their homes by making the homes more attractive sale items and allow prospective mobile home owners to capture the benefit of Ordinance 98-777 in the form of lower rental rates.
The following legal principles govern our review of facial constitutional challenges to statutes: "In determining a statute's constitutionality, we start from the premise that it is valid, we resolve all doubts in favor of its constitutionality, and we uphold it unless it is in clear and unquestionable conflict with the state or federal Constitutions. [Citation.] A challenge to a statute's constitutionality must demonstrate that its provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions. [Citation.] The corollary to the challenger's burden is that if the court can conceive of a situation in which the statute can be applied without entailing an inevitable collision with constitutional provisions, the statute will prevail. [Citation.] ... A statute will be declared invalid in its entirety only when its scope cannot be limited to constitutionally applicable situations except by reading in numerous qualifications and exceptions, i.e., rewriting it, or if it is invalid in certain situations and cannot be enforced in others *603 without danger of an uncertain or vague future application. [Citation.]" (County Mobilehome Positive Action Com., Inc. v. County of San Diego (1998) 62 Cal.App.4th 727, 733, 73 Cal.Rptr.2d 409, internal quotation marks omitted.)

A. Standard Of Review

Initially, we need to address the standard under which the ordinance in question must be reviewed. Both parties take the position that Ordinance No. 98-777 is not an unconstitutional regulatory taking if it (1) substantially advances a legitimate government interest, and (2) does not deprive Park Owners of all economically viable use of their property. (Nollan v. California Coastal Comm'n (1987) 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (hereafter, Nollan); Agins v. Tiburon (1980) 447 U.S. 255, 260, 100 S.Ct. 2138, 65 L.Ed.2d 106 (hereafter, "Agins").)[3] However, as we explain below, the Agins-Nollan test should not be utilized in determining the constitutionality of a rent control scheme applicable to mobile home parks. Instead, such a scheme should be reviewed to determine whether it results in arbitrary regulation of private landowner's property rights. (Santa Monica Beach, Ltd. v. Superior Court (1999) 19 Cal.4th 952, 967, 81 Cal.Rptr.2d 93, 968 P.2d 993 (hereafter, "Santa Monica Beach").)
In Nollan, the United States Supreme Court held that in cases where the government conditions lifting of a land-use restriction on dedication of a portion of a private land to the public, the condition is an unconstitutional regulatory taking unless it (1) substantially advances a legitimate state interest sought to be protected by the development ban, and (2) does not deprive the landowner of the economically viable use of his land. (Nollan, supra, 483 U.S. at pp. 834-842, 107 S.Ct. 3141, citing Agins, supra, 447 U.S. at p. 260, 100 S.Ct. 2138.) The court observed that a land-use restriction will be particularly scrutinized when the lifting of that restriction is conditioned upon actual conveyance of private property, "since in that context there is heightened risk that the purpose [of the condition] is avoidance of the compensation requirement, rather than the stated police-power objective." (Id. at p. 841, 100 S.Ct. 2138.)
The U.S. Supreme Court had no occasion to decide whether the Agins-Nollan test should be used to review either rent control laws applicable to apartment buildings (hereafter, "general rent control laws") or rent control laws applicable to mobile home parks; although, several comments by the court in Yee v. City of Escondido, Cal (1992) 503 U.S. 519, at page 530, 112 S.Ct. 1522, 118 L.Ed.2d 153 (hereafter, "Yee")[4], suggest that this test might be applicable to determine whether a mobile home park rent control law amounts to a regulatory taking.[5] On the contrary, the high court recently acknowledged that it had never extended the Agins-Nollan test beyond cases involving regulations requiring dedication of private property for public use as a condition of the issuance of a land development permit. *604 (City of Monterey v. Del Monte Dunes At Monterey, Ltd. (1999) 526 U.S. 687, 119 S.Ct. 1624,1635,143 L.Ed.2d 882.)
The California Supreme Court has never held that rent control schemes involving mobile home parks should be reviewed under the Agins-Nollan test. On the contrary, our Supreme Court has recently held that the Agins-Nollan test does not apply to general rent control laws. (Santa Monica Beach, supra, 19 Cal.4th at p. 967, 81 Cal.Rptr.2d 93, 968 P.2d 993.) Instead, the high court concluded that the standard of review in this context must be at least as deferential as for generally applicable zoning laws and other legislative land use controls, i.e. "... the party challenging rent control must show `that it constitutes an arbitrary regulation of property rights.' [Citation.]" (Ibid.) Although the court declined to characterize this new test as a rational basis test, it observed that it was more deferential to the government than the Agins-Nollan heightened intermediate scrutiny test. (Ibid.)
Notably, the court acknowledged that the dictum from Yee "suggested that the mobile home rent control scheme of regulation would be scrutinized to determine whether those restrictive regulations advanced a legitimate government interest." (Santa Monica Beach, supra, 19 Cal.4th at p. 969, 81 Cal.Rptr.2d 93, 968 P.2d 993.) Nevertheless, the court left unanswered the question of what standard of review applies to rent control regulation of mobile home parks. (Ibid.)
California Courts of Appeal have not applied a uniform standard of review to rent control schemes of mobile home parks. (Compare, Casella v. City of Morgan Hill (1991) 230 Cal.App.3d 43, 57, 280 Cal.Rptr. 876 ["Legislation passes muster if the legislature reasonably could have concluded that its action would promote a legitimate state interest."]; with Sandpiper Mobile Village v. City of Carpinteria, supra, 10 Cal.App.4th 542, 549-550, 12 Cal. Rptr.2d 623 ["In evaluating whether an ordinance on its face constitutes a taking of a landowner's property, the question is whether the ordinance substantially advances a legitimate state interest in the public welfare.... [¶] ... [¶] Unless the regulatory ordinance denies the property owner substantially all economically `viable use of [the] land,' there is no compensable taking."], accord Westwinds Mobile Home Park v. Mobilehome Park Rental Review Bd. (1994) 30 Cal.App.4th 84, 95, 35 Cal. Rptr.2d 315.)
We conclude that the Agins-Nollan test does not apply to rent control schemes of mobile home parks. The Santa Monica Beach court rejected the Agins-Nollan test (characterized by the court as an intermediate scrutiny test) in the context of general rent control laws because the test applied only in situations where the government required dedication of private property for public use before it issued a land use permit. (Santa Monica Beach, supra, 19 Cal.4th at p. 966, 81 Cal.Rptr.2d 93, 968 P.2d 993.) Instead, the court adopted a more deferential standard of review, reasoning that general rent control laws are "`essentially legislative determinations' that do not require any physical conveyance of property." (Id. at p. 966, 81 Cal.Rptr.2d 93, 968 P.2d 993.)
The reasoning of Santa Monica Beach is equally applicable to rent control schemes of mobile home parks. We are aware of the differences between general rent control laws and rent control laws of mobile home parks identified by the U.S. Supreme Court in Yee. However, these differences provide no justification for application of the Agins-Nollan test in the field of rent control of mobile home parks. All rent control schemes are essentially legislative determinations that only limit one particular use of private land. Rent control laws do not require physical conveyance of the property and do not interfere with traditional property rights, such as, for example, the right to exclude others from the property.
*605 Therefore, we conclude that the proper inquiry in determining whether a rent control scheme applicable to mobile home parks is a regulatory taking under the California Constitution is whether such a scheme is an arbitrary regulation of landowner's property rights. (Santa Monica Beach, supra, 19 Cal.4th at p. 967, 81 Cal.Rptr.2d 93, 968 P.2d 993.)

B. Ordinance No. 98-777 Is Constitutional

Having determined the appropriate standard of review, we now turn to the constitutionality of the ordinance in this case.
In order to establish that Ordinance No. 98-777 facially violates the takings clause of the California Constitution,[6] Park Owners must establish that the mere enactment of the ordinance amounted to a regulatory taking of private property for public use without compensation. As noted above, a rent control ordinance is a regulatory taking if it is an arbitrary regulation of property rights. (Santa Monica Beach, supra, 19 Cal.4th at p. 967, 81 Cal.Rptr.2d 93, 968 P.2d 993.) California courts have traditionally upheld rent control regulatory schemes against constitutional challenges under the takings clause. (See, e.g., Santa Monica Beach, supra, 19 Cal.4th at pp. 969-970, 81 Cal.Rptr.2d 93, 968 P.2d 993; cf. Kavanau v. Santa Monica Rent Control Bd. (1997) 16 Cal.4th 761, 781, 66 Cal.Rptr.2d 672, 941 P.2d 851.) In Casella v. City of Morgan Hill, the Sixth District upheld a rent control ordinance under the rational basis standard of review. (Casella v. City of Morgan Hill, supra, 230 Cal.App.3d at p. 57, 280 Cal. Rptr. 876.)
In this case, we conclude that Ordinance No. 98-777 is not a regulatory taking. Park Owners concede that protection of the current mobile home owners' equity in their homes and protection of prospective mobile home owners from excessive rents are legitimate government interests. City could have reasonably concluded that limiting Park Owners' ability to raise the rent upon the sale or transfer of mobile homes would accomplish that goal by making mobile homes more attractive sale items and making mobile home ownership more feasible for prospective buyers. Thus, Ordinance No. 98-777 on its face is not an arbitrary regulation of Park Owners' property rights.
Park Owners urge us to part company with prior California decisions upholding the constitutionality of rent control regulatory schemes similar to Ordinance No. 98-777. Instead, they contend that we should follow a 1997 decision from the Ninth Circuit, which found the City of Honolulu's rent control ordinance to be an unconstitutional regulatory taking. (See Richardson, supra, 124 F.3d at p. 1166.) We are not persuaded.
In Richardson, the Ninth Circuit found that the rent control ordinance was an unconstitutional regulatory taking because it did not provide for a separate mechanism allowing prospective mobile home owners to capture the benefit of the reduced rental rates. (Richardson, supra, 124 F.3d at p. 1166.) Thus, the court concluded that the ordinance failed to substantially advance the stated legislative goal of the ordinance to create more affordable housing in Honolulu. (Ibid.)
In this case, there is a good reason for not following the Ninth Circuit. The Richardson court used the Agins-Nollan test in striking down the Honolulu rent control ordinance. As we concluded above, this test cannot be used to review constitutionality of rent control schemes applicable to *606 mobile home parks. Moreover, our Supreme Court expressly held that this test cannot be used to review the constitutionality of general rent control laws. (Santa Monica Beach, supra, 19 Cal.4th at p. 967, 81 Cal.Rptr.2d 93, 968 P.2d 993.)
Therefore, we conclude that Ordinance No. 98-777 on its face is not a regulatory taking under the California Constitution.

II[***]

DISPOSITION
The judgment is affirmed.
RICHLI, J., and WARD, J, concur.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.
[**] Baxter, J., did not participate therein; Mosk, J., dissented.
[1] Park Owners made an express reservation of their right to litigate federal constitutional issues in federal court pursuant to England v. Louisiana State Bd. of Medical Examiners (1964) 375 U.S. 411, 420-421, 84 S.Ct. 461, 11 L.Ed.2d 440. Thus, the only constitutional claim before us is one made under article I, section 19 of the California Constitution.
[2] In the reply brief, Park Owners state that their complaint encompasses both facial and as-applied challenges to Ordinance 98-777. But in their opening brief, Park Owners state as follows: "Plaintiffs have brought an action which includes a cause of action for declaratory relief regarding the constitutionality of one portion of the Ordinance, not as to the entire Ordinance as applied to Plaintiffs." Furthermore, the declaratory relief count in Park Owners' complaint is labeled "Declaratory Relief: Re Facial Constitutionality of Ordinance No. 98-777." Thus, the as-applied challenge is being made for the first time in the reply brief, and it will not be considered. (Reichardt v. Hoffman (1997) 52 Cal.App.4th 754, 764-765, 60 Cal.Rptr.2d 770.) In any event, this issue could not otherwise be considered on the merits at this time because it is not ripe for adjudication. (Sandpiper Mobile Village v. City of Carpinteria (1992) 10 Cal. App.4th 542, 549, 12 Cal.Rptr.2d 623 ["Because Sandpiper has not alleged that it has attempted to change the use of its park or to apply for rent increases, its regulatory taking claim is not ripe."].)
[3] Hereafter, the Agins-Nollan test.
[4] In Yee, the U.S. Supreme Court noted that rent control schemes applicable to mobile homes differ from rent control laws applicable to apartments in that an apartment tenant does not transfer anything to the succeeding tenant while a mobile home owner actually transfers an asset, i.e., the mobile home itself. (Yee, supra, 503 U.S. at p. 530, 112 S.Ct. 1522.) Thus while a rent control scheme applicable to apartments benefits only prospective tenants in the form of reduced rent, a similar law applicable to mobile homes also allows the current mobile home owners to benefit by charging a higher sale price for the mobile home. (Ibid.)
[5] The lower federal courts had also utilized the Agins-Nollan test to decide whether a rent control regulatory schemes results in a regulatory taking. (See e.g., Federal Home Loan Mortgage Corp. v. New York State Division of Housing and Community Renewal (2nd Cir. 1996) 83 F.3d 45, 48; Richardson v. City and County of Honolulu (9th Cir.1997) 124 F.3d 1150, 1164-1166 (hereafter, "Richardson"'.)
[6] Article I, section 19 of the California Constitution provides, in pertinent part: "Private property may be taken or damaged for public use only when just compensation . . . has first been paid to . . . the owner."
[***] See Footnote *, ante