Filed 4/8/14  Peng v. Chase Home Finance CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| JEFFRY PENG et al., | B245436 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. GC049568) |
| v. | |
| CHASE HOME FINANCE LLC et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Jan Pluim, Judge.  Affirmed.

Philip E. Koebel; and Chris Ford for Plaintiffs and Appellants Jeffry Peng and Grace Peng.

Wargo & French, Mark Block, Jeffrey N. Williams for Defendants and Respondents JPMorgan Chase Bank, N.A. and Federal Home Loan Mortgage Corporation.

_____

Plaintiffs Jeffry and Grace Peng defaulted on a mortgage issued by JPMorgan Chase Bank, N.A.  Chase initiated foreclosure proceedings and the Pengs brought suit against it, Chase Home Finance, LLC,[1] and Federal Home Loan Mortgage Corporation (Freddie Mac) for wrongful foreclosure.  The trial court sustained a demurrer to the Pengs' complaint without leave to amend.  On appeal, the Pengs contend Chase lacked standing to foreclose on the property because it sold the note to Freddie Mac shortly after the Pengs' purchase.  Based on these newly discovered facts, the Pengs assert they can amend the complaint to state a cause of action against the defendants.  We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2007, the Pengs purchased a home in Temple City.  They took out a mortgage from Chase to finance the purchase.  In 2010, Jeffry lost his job and the Pengs began to have trouble paying their mortgage.  They attempted to get a loan modification or mortgage assistance from Chase with no success.  Chase initiated foreclosure proceedings in February 2011.  The Pengs, in pro per, brought suit on June 5, 2012, against Chase and Freddie Mac.

They alleged four causes of action: wrongful foreclosure, breach of the implied duty of good faith and fair dealing, quiet title, and negligent misrepresentation.  As to the wrongful foreclosure and quiet title causes of action, the Pengs asserted that the foreclosure was void as a result of Chase's failure to abide by certain statutory requirements, including failing to post a notice of foreclosure sale on the door as required by Civil Code section 2924f and failing to postpone a foreclosure sale by mutual agreement under Civil Code section 2924g, subdivision (c)(1) while they were seeking the loan modification.  The Pengs also alleged that when Jeffry asked Chase for mortgage assistance after he lost his job, Chase forced them to apply for loan modifications designed for employed people and for which they did not qualify.  Chase misled the

---

[1]     JPMorgan Chase Bank is the successor by merger to Chase Home Finance, LLC. We will refer to them collectively as Chase.

Pengs into believing they would be able to keep their home if they provided the requested financial documents. Chase, meanwhile, failed to offer the Pengs mortgage assistance under a program for which they did qualify, Keep Your Home California. Chase was obligated to participate in the Keep Your Home California Program, which offered up to $3,000 a month in mortgage assistance to unemployed homeowners who were collecting unemployment benefits from the state of California. Because Jeffry collected unemployment benefits from California from May 2010 to February 2011, he was eligible for the program, but Chase withheld such assistance.

As to the breach of the implied covenant of good faith and fair dealing claim, the Pengs alleged that Chase breached the implied covenant in its servicing agreement with Freddie Mac. Freddie Mac had directed Chase to participate in the various government mortgage assistance programs, including Keep Your Home California. By refusing to offer such assistance to the Pengs, Chase breached its covenant of good faith and fair dealing under the servicing agreement. In a novel approach, the Pengs alleged they were the beneficiaries of the servicing agreement and thus entitled to sue on that basis. As to the fourth cause of action for negligence, the Pengs alleged no facts and merely stated that they "reserve[d] the right to amend the fourth claim of relief for a later time."

Defendants demurred to the complaint. The trial court sustained the demurrer without leave to amend on the ground that the Pengs failed to allege tender or that they were prejudiced by any violation of Civil Code section 2924f. The trial court further held Chase had no duty to postpone the trustee's sale or give the Pengs a modification or temporary mortgage assistance. Additionally, the Pengs were not a party or intended beneficiary under the servicing agreement between Chase and Freddie Mac. Finally, the trial court found there was no claim for injunction since the foreclosure sale had already occurred. The Pengs timely appealed.

**DISCUSSION**

On appeal, the Pengs are now represented by appellate counsel. They urge us to "reverse the trial court's order so that the Plaintiffs can amend their complaint to correct mistakes that they made when the Defendants misled or defrauded the Plaintiffs and the

3

court." Specifically, the Pengs assert they learned for the first time that their mortgage had been sold to Freddie Mac after the demurrer had been sustained, and after they filed their notice of appeal. Because they now know Chase did not own the Pengs' mortgage at the time of the foreclosure proceedings, they seek to amend their complaint to state that Chase lacked standing to foreclose on the property and the foreclosure sale was void. According to the Pengs, only Freddie Mac "was vested with the ability to purchase the subject property by full credit bid at the nonjudicial foreclosure sale. [Citation.]"

We review de novo a trial court's decision to sustain a demurrer without leave to amend, exercising our independent judgment as to whether a cause of action has been stated as a matter of law and applying the abuse of discretion standard in reviewing the trial court's denial of leave to amend. (*Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790; *Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497-1498.) If there is a reasonable possibility that a plaintiff can amend his complaint to cure the defects, leave to amend must be granted. The plaintiff, however, must show how the complaint can be amended to state a cause of action. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.) A showing that the complaint can be amended to state a cause of action "need not be made in the trial court so long as it is made to the reviewing court." (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386; *Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 939.) Further, Code of Civil Procedure section 472c, subdivision (a), provides: "When any court makes an order sustaining a demurrer without leave to amend the question as to whether or not such court abused its discretion in making such an order is open on appeal even though no request to amend such pleading was made."

Here, the Pengs have failed to demonstrate both how the trial court abused its discretion when it denied them leave to amend and how the proposed amendment to their complaint would resuscitate their claims against Chase or Freddie Mac. First, the proposed allegations are not newly discovered. In the initial complaint, the Pengs acknowledged that Chase may not be the holder of the note or the beneficiary under the deed of trust. Notably, the Pengs alleged their loan was "owned by Freddie Mac

4

Corporation" and that Chase was "the servicer." They also alleged, "as a result of Chase's violation of the One Action Rule, Chase no longer had a security interest in the Subject Property at the time of foreclosure." The Pengs asserted that "Plaintiff's [*sic*] is currently uncertain which of the entities above is the current owners, servicers, beneficiaries, and prays leave to amend when such owners and servicers become known to Plaintiff's as their true names and capacities, but said Defendants will be henceforth called 'Chase Defendants' and 'Freddie Mac Defendants' for the sake of clarity and brevity." These allegations were before the trial court and were considered insufficient to state a claim against Chase. Notably, the Pengs do not contend that the trial court erred when it sustained the demurrer.

Even assuming that Freddie Mac's ownership of the note was newly discovered and not already considered by the trial court, the proposed allegations do not set forth any prejudice to the Pengs. As explained in *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 272 (*Fontenot*), "a plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests. [Citations.] Prejudice is not presumed from 'mere irregularities' in the process. [Citation.]" (*Id*. at p. 272.) In *Fontenot*, the plaintiff brought a wrongful foreclosure action. Among other things, she argued that the recorded assignment of the deed of trust and note from a mortgage registration company called MERS to HSBC Bank was invalid because MERS never held an assignable interest in the note. (*Id*. at p. 262.) Thus HSBC lacked authority to foreclose, never having received a proper assignment of the debt. (*Id*. at p. 271.) The *Fontenot* court found, "Even if MERS lacked authority to transfer the note, it is difficult to conceive how plaintiff was prejudiced by MERS's purported assignment, and there is no allegation to this effect. Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note. Plaintiff effectively concedes she was in default, and she does not allege that the transfer to HSBC interfered in any manner with her payment of the note

5

[citation], nor that the original lender would have refrained from foreclosure under the circumstances presented. If MERS indeed lacked authority to make the assignment, the true victim was not plaintiff but the original lender, which would have suffered the unauthorized loss of a $1 million promissory note." (*Id*. at p. 272.)

Likewise, here, there is no showing of prejudice to the Pengs from the sale of the mortgage to Freddie Mac. Whether Freddie Mac or Chase held the note, it is inescapable that the Pengs defaulted on it. They also did not tender payment or otherwise cure the default. There are no allegations, or proposed allegations, that Chase or Freddie Mac interfered in any way with their payments or that Freddie Mac would have refrained from foreclosing on the property. As the Pengs acknowledge and as the record shows, Chase foreclosed on the property and issued a grant deed of the property to Freddie Mac. A nonjudicial foreclosure sale is presumed to have been conducted regularly, and the burden of proof rests with the party attempting to rebut this presumption. (*Melendrez v. D&I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1258.) The Pengs have failed to allege any facts to rebut the presumption the nonjudicial foreclosure was conducted properly.

## DISPOSITION

The judgment is affirmed. Respondents are awarded costs on appeal.

BIGELOW, P. J.

I concur:

GRIMES, J.

6

RUBIN, J. – Dissenting

I respectfully dissent.

The promissory note signed by appellants Jeffry and Grace Peng obligated them to repay their home loan. In August 2007, Freddie Mac acquired the promissory note from Chase. Based on Freddie Mac owning the note, appellants seek to amend their complaint to allege Chase did not have authority to enforce the promissory note or to foreclose on their home, but the majority rejects appellants' proposed amendment. Relying on case law rebuffing a homeowner's challenge to a creditor-beneficiary's authority to foreclose, the majority notes that courts have traditionally reasoned that the homeowner's challenge is futile because, even if successful, the homeowner "merely substitute[s] one creditor for another, without changing [the homeowner's] obligations under the note." (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 271.) The only party prejudiced by an illegitimate creditor-beneficiary's enforcement of the homeowner's debt, courts have reasoned, is the bona fide creditor-beneficiary, not the homeowner.

Such reasoning troubles me. I wonder whether the law would apply the same reasoning if we were dealing with debtors other than homeowners. I wonder how most of us would react if, for example, a third-party purporting to act for one's credit card company knocked on one's door, demanding we pay our credit card's monthly statement to the third party. Could we insist that the third party prove it owned our credit card debt? By the reasoning of *Fontenot* and similar cases, we could not because, after all, we owe the debt to *someone*, and the only truly aggrieved party if we paid the wrong party would, according to those cases, be our credit card company. I doubt anyone would stand for such a thing.

I think cases such as *Fontenot* – and their solicitude for self-proclaimed creditor-beneficiaries who ask us to take on their say-so authority to foreclose on someone's home – are, or should be, a legacy from a bygone era. There was a time when the orderliness and regulatory oversight of the mortgage industry perhaps justified a presumption that creditor-beneficiaries acted lawfully when they enforced a homeowner's debt. In those days, courts excused mortgage lenders from proving their authority because we trusted they acted properly, and we presumed that a homeowner's challenge was typically a delaying tactic to avoid a valid foreclosure. (See e.g. *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 82 ["California courts have refused to allow [homeowners] to delay the nonjudicial foreclosure process by pursuing preemptive judicial actions challenging the authority of a foreclosing 'beneficiary' or beneficiary's 'agent.' "]; *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 511-512 [same].)

I think the old presumption no longer withstands the press of current events. Today's foreclosures playing out in the courts and elsewhere bear little resemblance to what happened with the mortgages of our grandparents. Widespread securitization of mortgages in the years before the financial meltdown of 2008, an economic catastrophe triggered in part by the often unlawful repeated packaging, selling, repackaging, and reselling of mortgages mostly unseen and poorly understood by homeowners, investors, regulators, and the public, has changed the financial landscape, and should change the legal landscape, too. The common law evolves to meet new challenges from new circumstances. In a quip often attributed, perhaps incorrectly, to John Maynard Keynes, "When the facts change, I change my mind. What do you do sir?" The time has come to insist upon regularity in foreclosure proceedings. I therefore believe we have reached the time to make clear a homeowner's right to challenge a foreclosure based on the foreclosing party's absence of authority to foreclose.

Perhaps in recognition that the mortgage business is not what it once was, courts have started to permit homeowners to challenge the loss of their homes on the ground that the foreclosing party did not own the homeowner's promissory note or security interest and did not represent the party who did. "[O]nly the 'true owner' or 'beneficial holder' of a Deed of Trust can bring to completion a nonjudicial foreclosure under California law." (*Barrionuevo v. Chase Bank, N.A.* (N.D.Cal. 2012) 885 F.Supp.2d 964, 972.) "Several courts have recognized the existence of a valid cause of action for wrongful foreclosure where a party alleged not to be the true beneficiary instructs a trustee to file a Notice of Default and initiate nonjudicial foreclosure." (*Id.* at pp. 972-973.) Among the cases in this post-2008 financial meltdown era are:

*Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1088, 1097: A homeowner successfully "raised questions regarding the chain of ownership, by contending that the defendants were not the lenders or beneficiaries under his deed of trust and, therefore, did not have the authority to foreclose."

*Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1378-1379: Deutsche Bank was not entitled to summary judgment on a wrongful foreclosure claim because it failed to show a chain of ownership that would establish it was the true beneficiary under the deed of trust.

*Barrionuevo v. Chase Bank, N.A., supra,* 885 F.Supp.2d at pages 973–974: The court permitted a cause of action for wrongful foreclosure where a homeowner alleged that Chase lacked authority to foreclose because Washington Mutual securitized the subject loan, divesting itself of any interest, prior to transferring its beneficial interest to Chase.

*Sacchi v. Mortgage Elec. Registration Sys.* (C.D.Cal. June 24, 2011, No. CV 11-1658 AHM (CWx)) 2011 U.S.Dist. Lexis 68007, *16-21: A homeowner stated a cause of action for wrongful foreclosure where MERS transferred a lender's beneficial interest in a deed to the lender's successor *after* the successor executed without authority a substitution of trustee, making the new trustee's notice of sale invalid.

3

*Ohlendorf v. Am. Home Mortg. Servicing* (E.D.Cal. 2010) 279 F.R.D. 575, 583: Permitted a homeowner to pursue a claim for wrongful foreclosure where the foreclosing party may have relied on a series of backdated transfers of a deed of trust's beneficial interest to pursue foreclosure. Documents showed that MERS was the beneficiary under the deed of trust at the time foreclosure proceedings began, but the notice of default listed Deutsche Bank as beneficiary and a mortgage servicer as trustee. To rectify the "taint" of the inconsistent recorded documents, MERS filed a backdated assignment of the beneficial interest to the mortgage servicer, and 11 seconds later the mortgage servicer recorded a backdated assignment of the deed of trust to Deutsche.

*Javaheri v. JPMorgan Chase Bank, N.A.* (C.D.Cal. June 2, 2011, No. CV10-08185 ODW (FFMx)) 2011 U.S.Dist. Lexis 62152, *12-14: A homeowner stated a claim for wrongful foreclosure against J.P. Morgan Chase by alleging that lender Washington Mutual sold the homeowner's promissory note to an investment pool, which thereafter transferred the promissory note to another investment pool, preventing J.P. Morgan Chase from obtaining the note when it acquired Washington Mutual's assets because the note was no longer owned by Washington Mutual at the time of the assignment.

I suspect that creditor-beneficiaries and their trustees do not want to be forced to prove they own a homeowner's debt and have authority to foreclose because it is now well understood that in too many cases they can't prove their ownership and authority. I am not prejudging the facts in this case, for that is why we have discovery and a trial. But tellingly, even here respondents' demurrer was beset by missing paperwork. In their demurrer, respondents state:

"On June 12, 2007, Plaintiffs obtained a loan ("Loan") from Chase. In connection with the Loan, Plaintiffs executed a promissory note ("Note") and deed of trust ("DOT"), securing the Loan . . . . Chase was the beneficiary and First American was the trustee under the DOT. [¶] Subsequently, Chase assigned the DOT to Chase Home Finance, LLC. After Plaintiffs defaulted on the Loan, First American recorded a Notice of Default and Election to Sell Under Deed of Trust ("NOD") against the Property. Chase Home

4

Finance, LLC, also recorded a Substitution of Trustee, reflecting the substitution of Northwest Trustee as the trustee under the DOT. Because Plaintiffs failed to cure the default, Northwest Trustee recorded, on February 1, 2011, a Notice of Trustee's Sale ("NOTS") against the Property. Northwest Trustee conducted the trustee's sale on December 28, 2011, where Chase, successor by merger to Chase Home Finance, LLC, acquired title to the Property. On March 28, 2012, Chase recorded a Grant Deed, reflecting that it had granted the property to FHLMC."

But notice what is missing from respondents' history of the loan – Chase's sale to Freddie Mac of appellants' promissory note in August 2007. Freddie Mac's "Loan Look-Up Tool" states its "records show that Freddie Mac is the owner of your [i.e. appellants'] mortgage and it was acquired on August 23, 2007." I do not suggest that respondents intended to mislead the trial court by omitting the fact that Chase had sold appellants' promissory note in 2007, four years before Chase bought the house in foreclosure. The reason I point out the omission is to highlight the difficulty of learning from tangled paper trails "who, what, where, when, and how" in mortgage cases involving lender documents that are sometimes – take your pick – incomplete, lost, inaccurate, post-dated, altered, robosigned, or created after the fact.[1] I would therefore permit appellants to pursue their claim for wrongful foreclosure on the grounds that Chase did not have authority to enforce the debt or to foreclose. What do respondents have to fear? Chase either had the authority to act when it submitted a credit bid to foreclose on appellants'

---

[1]    In this case, for example, appellants signed their promissory note and deed of trust in June 2007 and Chase sold the note to Freddie Mac in August 2007. The Trustee's Deed Upon Sale states Chase bought appellants' home in foreclosure on December 28, 2011 (by credit bid, a prerogative of the present beneficiary). Chase thereafter gave the house to Freddie Mac by Grant Deed on March 9, 2012, but, incongruously, the Trustee's Deed Upon Sale – which precedes the Grant Deed in the chain of title – was not notarized until March 22, 2012, almost two weeks after Chase had deeded the house to Freddie Mac. A trifle, perhaps, but wouldn't it have been more businesslike and orderly to notarize the Trustee's Deed Upon Sale closer to the actual sale in late December 2011, rather than wait three months until *after* Chase transferred ownership of the house by a Grant Deed to Freddie Mac (thus superseding the yet-to-be-recorded Trustee's Deed Upon Sale)?

home despite having sold appellants' promissory note to Freddie Mac – and has the evidence to prove it – or it did not. (See Civ. Code, § 2924h, subd.(b) [the "present beneficiary" may credit bid at trustee's sale].) It really is a simple matter. Is that too much to ask when people are losing their homes?


RUBIN, J.