Filed 10/1/14  Markowitz v. LPL Financial CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BRAD MARKOWITZ, | B253313 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC423690) |
| v. | |
| LPL FINANCIAL, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Rita Miller, Judge.  Affirmed.

Pick & Boydston and Brian D. Boydston for Plaintiff and Appellant.

Markun Zusman Freniere & Compton, David S. Markun, Edward S. Zusman, and Kevin K. Eng for Defendant and Respondent.

Plaintiff and appellant Brad Markowitz (plaintiff) appeals from the judgment entered in favor of defendant and respondent LPL Financial, LLC (LPL) after the trial court sustained, without leave to amend, LPL's demurrer to all of the causes of action asserted against it in plaintiff's third amended complaint. We affirm the judgment.

## BACKGROUND

**Factual background**

Plaintiff was the victim of a fraudulent scheme masterminded by Michael E. McCready, a financial representative of several national brokerage firms, including LPL and SmithBarney (now defendant Citigroup Global Markets, Inc.). McCready was a registered SmithBarney broker from 2002 until August 2004 and was a registered LPL broker from August 2004 to August 2005.

Plaintiff's relationship with McCready began in late 2003 or early 2004, while McCready was a broker at SmithBarney. At that time, Plaintiff gave McCready control over all of his finances, including several annuities with ING USA (ING), which were managed by McCready through SmithBarney.

In early 2004, McCready recommended that plaintiff refinance his home with CitiMortgage, a division of Citicorp, which also owned SmithBarney. Plaintiff heeded McCready's advice and in June 2004 refinanced the first mortgage on his home through McCready and SmithBarney with CitiMortgage. Unbeknownst to plaintiff, McReady obtained a second mortgage on plaintiff's home with a $260,000 limit and diverted funds from the second mortgage to himself.

McCready became an LPL registered representative in August 2004 but continued to manage plaintiff's ING annuities through SmithBarney. In 2005, McCready liquidated plaintiff's ING annuities and diverted the proceeds to himself in three separate transactions.

In February 2005, plaintiff caused a portion of the ING annuities to be liquidated, at McCready's request. McCready told plaintiff that the money was being "rolled over" to a new investment. Plaintiff gave McCready a check issued by ING through

2

SmithBarney in the amount of $125,000. McCready deposited the check into a Wachovia Bank account held in the name of an entity controlled by him.

In April 2005, ING issued a check through SmithBarney for $150,000. McCready forged plaintiff's signature on the check, which was deposited into the Wachovia Bank account controlled by McCready.

In June 2005, ING issued a check through SmithBarney for $200,000. McCready forged plaintiff's signature on the check and deposited it into the Wachovia Bank account he controlled.

**Procedural background**

On April 30, 2013, plaintiff filed a third amended complaint,[1] the operative pleading in this appeal, asserting causes of action for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, fraud, aiding and abetting fraud, negligence, violation of Business and Professions Code section 17200 et seq., respondeat superior, and conversion.

The allegations relevant to LPL state:

"a. On February 2, 2005, [plaintiff] gave McCready [a] check issued by ING through SmithBarney for $125,000 which was deposited into a Wachovia Bank account in the name of Business Development, Inc., which was an entity controlled by McCready. At the time, [plaintiff] was told by McCready that the money was being 'rolled over' to a new investment. In fact, McCready used the funds for his own purpose.

"b. On April 8, 2005, while [plaintiff] was in Moscow, Russia, for work, ING issued a check through SmithBarney for $150,00 which was deposited into McCready's Business Development, Inc. Wachovia account. [Plaintiff] never knew this had occurred and the check was executed with a forged signature of [plaintiff's] name.

"c. On June 2, 2005, while [plaintiff] was still in Moscow, Russia, for work, ING issued a check through SmithBarney for $200,000 which

---

[1]     Plaintiff commenced this action against McCready in 2009 and added LPL as a defendant in the first amended complaint. The trial court sustained a demurrer to the first amended complaint on uncertainty grounds. Plaintiff thereafter filed a second amended complaint, to which SmithBarney's demurrer was sustained, with leave to amend.

was deposited into McCready's Business Development, Inc. Wachovia account. [Plaintiff] never knew this had occurred and the check was executed with a forged signature of [plaintiff's] name."

LPL demurred to all causes of action on the ground that the third amended complaint alleged no facts establishing liability on the part of LPL. LPL argued that plaintiff had alleged only three transactions that had taken place while McCready was a registered representative of LPL; those three transactions were alleged to have involved ING annuities that were liquidated through plaintiff's SmithBarney accounts; all of the complained of activity took place through entities other than LPL; and there were no factual allegations to link LPL to the activity.

The trial court agreed that the third amended complaint "alleges no facts which would establish LPL had any connection with or knowledge of the liquidation of plaintiff's annuities" and sustained the demurrer without leave to amend. This appeal followed.

## DISCUSSION

### I. Standard of review

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967.) The legal sufficiency of the complaint is reviewed de novo. (*Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790.)

4

## II.  The demurrer was properly sustained

Plaintiff concedes the absence of any factual allegation that LPL knew of, was involved in, or authorized or benefitted from McCready's actions.  He contends the allegation that McCready's misdeeds were committed while he was a registered LPL representative is sufficient to state claims against LPL for vicarious liability and breach of fiduciary duty under the standard set forth in *Hollinger v. Titan Capital Corp.* (9th Cir. 1990) 914 F.2d 1564 (*Hollinger*).

*Hollinger* involved a claim under section 20 of the Securities and Exchange Act of 1934 (15 U.S.C. § 78a, hereafter section 20), which imposes vicarious liability on brokerage firms for actions taken by their registered representatives beyond that imposed under the common law theory of respondeat superior.[2]  The court in *Hollinger* held the broker-dealer vicariously liable as a controlling person under the federal statute for embezzlement by its registered representative.  (*Hollinger, supra*, 914 F.2d at p. 1574.)

Plaintiff alleges no statutory claim under section 20 or any other provision of the federal securities laws.  The vicarious liability standard for broker-dealers under section 20 accordingly does not apply.  Moreover, even under section 20, a broker-dealer is not liable for all actions taken by its registered representatives.  The court in *Hollinger* explained:  "[W]e do not mean that a broker-dealer is vicariously liable under [section] 20(a) for all actions taken by its registered representatives.  Nor are we making the broker-dealer the 'insurer' of its representatives, which is a result we rejected . . . as going beyond the scope of the vicarious liability imposed upon a broker-dealer by [section] 20(a).  The mere fact that a controlling person relationship exists does not mean that vicarious liability necessarily follows."  (*Hollinger, supra*, 914 F.2d at p. 1575.)

---

**2**      The relevant federal statutory provision states:  "Every person who, directly or indirectly, controls any person liable under any provision of this title [15 U.S.C. §§ 78a et seq.] or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable (including to the Commission in any action brought under paragraph (1) or (3) of section 21(d) [15 U.S.C. § 78u(d)]), unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action."  (15 U.S.C. § 78t(a).)

*Hollinger* is also factually distinguishable. In that case, the dishonest financial advisor, Wilkowski, worked as a registered representative of Titan Capital Corporation, a registered broker-dealer. While working as a registered representative of Titan, Wilkowski legitimately invested some of the plaintiffs' funds in securities through Titan. He also diverted funds from the plaintiffs for his own benefit, however, and used Titan stationery to generate bogus receipts and financial statements showing that the stolen funds had been used to purchase securities through Titan. (*Hollinger, supra*, 914 F.2d 1564.) In the instant case, LPL had no connection whatsoever with McCready's misfeasance, which involved liquidating ING annuities through a SmithBarney account and depositing the proceeds into a Wachovia Bank account.

The circumstances presented here are similar to those in *Asplund v. Selected Investments In Financial Equities, Inc.* (2000) 86 Cal.App.4th 26 (*Asplund*). The plaintiffs in *Asplund* purchased securities issued by Medco, Inc. from Joseph Tufo, a registered representative of SIFE, a registered broker-dealer whose sole purpose was to act as a management company for a mutual fund. (*Id.* at pp. 30, 44.) SIFE had no economic or other interest in Medco, and investments in Medco competed with those SIFE offered to the public. (*Id.* at p. 44.) Medco eventually failed and the plaintiffs lost their investment. The plaintiffs sued SIFE, arguing that because the sale of securities and the activities of broker-dealers are regulated by federal law, federal standards should govern. Those standards, the plaintiffs argued, imposed a duty on a broker-dealer to supervise all securities transactions effected by its registered representative. (*Id.* at p. 39.) The court in *Asplund* rejected this argument, concluding that federal law "impose[s] no responsibility on a broker-dealer to supervise sales to persons with whom it has no relationship of securities in which it has no economic interest." (*Id.* at p. 41.)

After expressing doubt as to whether a violation of federal securities law may serve as a basis for "imposing a common law duty that would not otherwise exist" (*Asplund, supra*, 86 Cal.App.4th at p. 40, fn. omitted), the court in *Asplund* discussed at length federal case law, including *Hollinger*, and the scope of a broker-dealer's statutory liability for the acts of its representatives. (*Asplund*, at pp. 41-44.) The court noted that

6

after *Hollinger*, the Ninth Circuit "refined its reasoning" in *Hauser v. Farrell* (9th Cir. 1994) 14 F.3d 1338 (*Hauser*) by considering "what conduct by a representative is 'outside of the broker-dealer's statutory control.'" (*Asplund, supra*, at p. 43.) The court in *Asplund* examined *Hauser*, in which the Ninth Circuit held that a transaction is outside the scope of controlling person liability under the federal securities laws when (1) it is not the type of securities transaction that can only be performed through the representative's association with the broker-dealer; (2) the investment is unrelated to any of the securities offered by the broker-dealer through its registered agents; (3) the representative is not acting in his capacity as a registered agent of the broker-dealer in the transaction at issue; (4) the broker-dealer has no economic or other interest in the transaction; and (4) the broker-dealer has no knowledge of the transaction. (*Hauser, supra*, at pp. 1341-1342.) The *Asplund* court noted that nearly all of these factors were present in the case before it and concluded that SIFE could not be held vicariously liable for the acts of Tufo, its registered representative, "even indulging the dubious theory that the violation of a federal statute or regulation can be employed . . . to impose a duty that would not otherwise exist under state law." (*Asplund, supra*, at p. 45.)

Plaintiff's factual allegations cover all of the factors discussed by the court in *Asplund*. He has alleged no facts connecting LPL to McCready's actions. The trial court did not err by sustaining LPL's demurrer.

## III.  Denial of leave to amend

Plaintiff fails to suggest how he would amend the third amended complaint to correct the defects noted above. The burden of proving a reasonable possibility of amending the complaint to state a cause of action "is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) The trial court therefore did not abuse its discretion by sustaining the demurrer without leave to amend.

7

## DISPOSITION

The judgment is affirmed.  LPL's motion for sanctions is denied, but LPL is awarded its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
CHAVEZ


We concur:


_____, P. J.
BOREN


_____, J.
ASHMANN-GERST