Filed 4/23/26  Fox Hills Canterbury Co. v. City of Culver City CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| FOX HILLS CANTERBURY COMPANY, | B342302 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 24STCP00451) |
| v. | |
| CITY OF CULVER CITY, | |
| Defendant and Respondent; | |
| MEADOWS FORWARD ACTION COMMITTEE, | |
| Intervener and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Affirmed.

Hill, Farrer & Burrill, Kevin H. Brogan and Dean E. Dennis, for Plaintiff and Appellant.

Heather Baker, City Attorney, Christina Burrows, Assistant City Attorney, Michael Cobden, Deputy City Attorney, for Defendant and Respondent.

Munger, Tolles & Olson and Michael E. Soloff for Intervener and Respondent.

_____

Appellant Fox Hills Canterbury Company (Fox Hills) obtained building permits allowing it to renovate aging apartment buildings in Culver City (the City). Before it completed all of the renovations, the City enacted a tenant protection ordinance requiring Fox Hills to return displaced tenants to the rental units, after renovation, with the same rights they had when displaced. A rent control ordinance would regulate permissible increases in the tenants' rent. Fox Hills filed a petition for writ of mandate and complaint for declaratory relief seeking an exemption from the tenant protection ordinance. It also asserted that application of the ordinance constituted a regulatory taking as it completely altered its investment backed expectations. The trial court sustained demurrers by the City and intervener Meadows Forward Action Committee (the Committee) (collectively with the City, "respondents") to Fox Hills's operative pleading. The court found that Fox Hills had no vested right that would exempt it from the ordinance and that the takings claim was not ripe because Fox Hills had not availed itself of available City procedures for relief. We affirm.

2

## FACTUAL AND PROCEDURAL BACKGROUND

**A.    The City's Tenant Protection and Rent Control Laws**

In September 2020, the City adopted its Tenant Protection Ordinance (TPO) and Rent Control Ordinance (RCO).

As relevant to this case, the TPO states that a landlord may not terminate a tenancy unless the landlord can demonstrate the termination qualifies as a for-cause or no-fault termination as defined in the TPO.  (Culver City Municipal Code (CCMC) § 15.09.310(B)(2).)  Temporary "untenantable conditions"[1] resulting from "[s]ubstantial rehabilitation" work that requires a permit from a government agency are not a valid basis for a no-fault termination.  (*Id.* at § 15.09.330(C)(1).)  If the substantial rehabilitation makes the rental unit untenantable, the landlord must provide the tenant with relocation benefits during the displacement period.  The tenant remains responsible for paying rent and has the right to reoccupy his or her unit upon completion of the work with the same rights "that existed prior to the displacement."  (*Id.* at § 15.09.330(E).)  The TPO does not have any provisions permitting landlords to apply for and receive exemptions.

The RCO applies to apartment buildings that obtained a certificate of occupancy prior to February 1995.  (CCMC § 15.09.210(A).)  The ordinance allows landlords of covered rental units to increase rent annually in an amount not to exceed the percentage change in the Consumer Price Index, with a cap of five percent and a floor of two percent.  (*Id.* at § 15.09.215(B).)

---

[1]    "Untenantable conditions include the conditions described in Cal. Civil Code § 1941.1 and any other condition that makes the rental unit incapable of being safely occupied."  (CCMC § 15.09.330(B).)

If a landlord contends that the limitations on rent increases will prevent the landlord from receiving "a fair and reasonable return with respect to the operation of the property," and the landlord desires to increase rent in an amount greater than allowed under the RCO, the landlord may file a rent adjustment application with the Housing Division of the Culver City Community Development Department.  (CCMC § 15.09.220(A).) Rent adjustment applications are considered in accordance with Housing Division guidelines.  (*Id.* at § 15.09.220(E).)  The Housing Division's "Guideline/Rule No. 2021-RC02" for rent adjustment applications, which has "the force and effect of law" (*id.* at § 15.09.265), states that "[l]andlords may submit as part of their Application capital improvement expenses that have not been or are not eligible to be passed-through to tenants through the City's Capital Improvement Cost Recovery Pass-Through program."

The RCO capital improvement cost recovery pass-through provision allows a landlord to pass-through 50 percent of eligible capital improvements to a tenant, with no pass-through cost allowed that exceeds three percent of the rent.  (CCMC § 15.09.225.)  Section 15.09.225(B) of the CCMC defines eligible capital improvements.

## B.  Fox Hills's First Amended Petition

Fox Hills's operative first amended petition for writ of mandate and complaint for declaratory relief and inverse condemnation made the following allegations.

Fox Hills owns the Meadows Apartments located in the City.  The property consists of 24 separate multi-family apartment buildings, each containing a number of separate

rental units.  The property is divided into two areas known as Meadows North and Meadows South.  Fox Hills constructed the apartments in 1974.

Due to the age of the buildings, the property has had various plumbing leaks and sewer line issues.  Costs associated with the repairs have increased dramatically over the years.  In light of the expenses, in 2016, Fox Hills undertook a renovation project to, among other things, remove and replace pipes, lines, and infrastructure in the exterior and interior of the buildings.

To implement the project, Fox Hills obtained more than 100 building permits from the City from 2016 to 2019.  Fox Hills completed all exterior work for the Meadows Apartments by August 2019.  The next phase involved work inside the apartment buildings and each unit.  Fox Hills completed all work for Meadows South in 2021.  Fox Hills alleged it has expended more than $19.7 million in reliance on the building permits.

The remaining work to be completed is for the interior of the Meadows North buildings, which is authorized by the existing building permits.  The work will require substantial removal of concrete slabs, sewer lines, drywall, fixtures, cabinets, flooring, and appliances.  The tenants in Meadows North will need to vacate their units.  All tenants will be under month-to-month leases when the work commences.

After the TPO was enacted in September 2020, and beginning in the fall of 2021, Fox Hills reached out to the mayor and city council members about proceeding with the work for Meadows North without having to comply with the ordinance.  In January 2023, the City advised Fox Hills that the city council voted to have Fox Hills's concern agendized for a future meeting.

5

The City did not, however, ultimately notice or conduct a hearing on Fox Hills's request.

In September 2023, Fox Hills sent the City a letter seeking an exemption from application of the TPO "based upon the vested rights obtained through the issuance of building permits, work completed[,] and the $19.7 million spent in reliance thereon." The City declined to formally respond to Fox Hills's request.

Fox Hills's first amended petition alleged three causes of action. The first sought a writ of mandate requiring the City to exempt Fox Hills from the TPO based on its alleged vested rights. The second sought a declaration that the TPO was inapplicable to Fox Hills's property. The third cause of action for inverse condemnation alleged the TPO, if enforced against Fox Hills, constituted a taking of private property without payment of just compensation for "the lost rent on the to-be-renovated apartments, and additional expenditures."

## C. Respondents' Demurrers and the Trial Court's Ruling

The City and Committee each demurred to the first amended petition arguing it failed to state a claim. They argued the only right granted by the building permits was to perform the specified renovation work. The permits, they argued, did not give Fox Hills any right to be exempt from the TPO. The City additionally argued that Fox Hills's takings claim was not ripe for adjudication because Fox Hills had not presented any rent adjustment application to the City, which was the proper mechanism to account for any alleged losses arising from the TPO and RCO. Fox Hills opposed the demurrers. It argued it had a right to complete the project based on its economic

6

expectations when the permits were issued and that application of the TPO constituted a regulatory taking because it altered Fox Hills's "investment backed expectations."

The trial court took judicial notice of various documents submitted by respondents, including the TPO, RCO, and several permits issued to Fox Hills. The permits generally contain short, specific descriptions of the work the City approved. For example, they authorize plumbing work on "24 clothes washer standpipes," mechanical work on "24 single duct exhaust/fans," and electrical work on "48 branch circuits, 48 electrical devices, [and] 24 service/sub panel[s]."

The trial court, in relevant part, determined the mandamus claim was not ripe because the City had taken no action to enforce the TPO against Fox Hills. In any event, the court also determined the permits did not confer a vested right to be free of the subsequently enacted TPO. The court found the declaratory relief claim was "subsumed" within the mandamus claim. As to the regulatory takings claim, the court found it was not ripe because Fox Hills had not availed itself of any of the procedures contained in the RCO to account for any alleged rental losses caused by the TPO and RCO. The court sustained the demurrers as to all claims without leave to amend. Fox Hills timely appealed from the order of dismissal.

## DISCUSSION

### A. Demurrer Standard of Review

We review an order sustaining a demurrer without leave to amend de novo. (*United Talent Agency v. Vigilant Ins. Co.* (2022) 77 Cal.App.5th 821, 829.) "'We treat the demurrer as admitting all material facts properly pleaded, but not contentions,

7

deductions or conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed.'  [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).)  When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Ibid.*)

**B.    Fox Hills Did Not have a Vested Right to be Exempt from the TPO**

Fox Hills's primary contention on appeal is that, because it expended substantial sums in reliance on the building permits issued by the City, it had a vested right to operate the Meadows Apartments, and complete the renovation project, free from any obligations imposed by the TPO.  It also contends that the trial court erred in finding its vested rights challenge was not ripe.  Assuming that Fox Hills's vested rights challenge was ripe, we conclude Fox Hills did not establish a vested right to be exempt from the TPO.

Under the vested rights doctrine, if a property owner performs substantial work and incurs substantial liabilities in good faith reliance on a building permit, the owner acquires vested rights to complete the project in accordance with the terms of the permit and to use the premises as the permit allows. (*South Lake Tahoe Property Owners Group v. City of South Lake Tahoe* (2023) 92 Cal.App.5th 735, 747 (*South Lake Tahoe*); *Blue Chip Properties v. Permanent Rent Control Bd.* (1985) 170

8

Cal.App.3d 648, 658–659 (*Blue Chip*).) "'[T]he rights which may "vest" through reliance on a government permit are no greater than those specifically granted by the permit itself.'" (*South Lake Tahoe*, at p. 749; *Blue Chip*, at p. 660.)

The vested rights doctrine is ""predicated upon estoppel of the governing body."'" (*Russ Bldg. Partnership v. City and County of San Francisco* (1988) 44 Cal.3d 839, 853–854 (*Russ*).) "'[A]n equitable estoppel requiring the government to exempt a land use from a subsequently imposed regulation must include (1) a promise such as that implied by a building permit that the proposed use will not be prohibited by a class of restrictions that includes the regulation in question and (2) reasonable reliance on the promise by the promisee to the promisee's detriment.'" (*Id.* at p. 854.) "[E]stoppel can be invoked in the land use context in only 'the most extraordinary case where the injustice is great and the precedent set by the estoppel is narrow.'" (*Toigo v. Town of Ross* (1998) 70 Cal.App.4th 309, 321 (*Toigo*).)

Fox Hills's first amended petition alleged that before the TPO was enacted, Fox Hills obtained numerous building permits for its renovation project at Meadows North and expended substantial sums in reliance thereon. However, the rights that vest through reliance on government permits are only those rights specifically granted by the permits themselves. (*South Lake Tahoe*, *supra*, 92 Cal.App.5th at p. 749; *Blue Chip*, *supra*, 170 Cal.App.3d at p. 660.) Fox Hills neither alleged nor identified any permit under which it obtained the right to complete the project without having to comply with subsequent tenant protection laws. Indeed, Fox Hills remains free to complete the renovation project as specified in the permits. The permits thus did not give Fox Hills a vested right to be exempt

9

from the TPO. (See *Blue Chip*, at p. 662 ["approval of a tentative tract map for condominium conversion does not lead to a vested rights exemption from subsequent rent control laws"]; see also *Briarwood Properties, Ltd. v. City of Los Angeles* (1985) 171 Cal.App.3d 1020, 1030 (*Briarwood*) [while tentative map approval assured right to complete condominium conversion process, developer did not obtain vested right to do so free from application of independent tenant relocation assistance law].)[2]

Fox Hills's estoppel argument also fails. It does not point to anything in the record that could be interpreted as a promise from the City that it would be exempt from any future tenant protection laws. Further, "the rental industry is routinely regulated; 'Rent control, like the imposition of a new tax, is simply one of the usual hazards of the business enterprise.'" (*Danekas v. San Francisco Residential Rent Stabilization & Arbitration Bd.* (2001) 95 Cal.App.4th 638, 651.) Thus, to the extent Fox Hills relied on its beliefs and "own self-serving interpretation" of the permits, "such reliance must be considered unreasonable." (*Russ*, *supra*, 44 Cal.3d at pp. 853–854 ["A vested right requires more than a good faith subjective belief that one has it"].) Further, Fox Hills does not demonstrate the estoppel in this case would be narrow. (*Toigo*, *supra*, 70 Cal.App.4th at p. 321.) If we accepted Fox Hills's contention that it had a vested right to be exempt from the TPO, "there could be serious impairment of the government's right to control land use policy."

---

[2]     Fox Hills asserts that *Blue Chip* and *Briarwood* are distinguishable because they concerned the Subdivision Map Act and condominium conversions. Regardless, these cases stand for the proposition that a permit authorizes only the work specified in the permit.

(*Avco Community Developers, Inc. v. South Coast Regional Com.* (1976) 17 Cal.3d 785, 797, superseded by statute on another ground as stated in *Cotta v. City and County of San Francisco* (2007) 157 Cal.App.4th 1550, 1559, fn. 5.)

Fox Hills contends that our Supreme Court in *Russ*, *supra*, 44 Cal.3d 839, "broaden[ed] the inquiry" for determining vested rights "well beyond the specific language of the permit." Fox Hills mischaracterizes *Russ's* holding. In that case, the plaintiffs obtained building permits expressly conditioned on their participation "'in a downtown assessment district, or similar fair and appropriate mechanism, to provide funds for maintaining and augmenting transportation service . . . .'" (*Id.* at p. 843.) *Russ* addressed whether that condition encompassed San Francisco's subsequently enacted Transit Impact Development Fee (TIDF), which required developers of downtown buildings containing office space to pay a TIDF as a *condition* of issuance of a certificate of completion and occupancy. (*Id.* at pp. 843–844.) Because the TIDF fell among the "funding mechanisms contemplated by the resolutions," application of the ordinance to the plaintiffs was proper as the transit mitigation condition "included the eventuality of the TIDF." (*Id.* at p. 846.) *Russ* did not hold that a court was required to look beyond the terms of a permit and consider a property owner's economic expectations in determining what rights the permits conferred. Rather, it recognized that the plaintiffs' vested rights were "'no greater than those specifically granted by the permit[s themselves].'"[3] (*Id.* at p. 854.)

---

[3] Citing *Russ*, Fox Hills argues for the first time in its reply brief that it was entitled to notice that the TPO would be applied to its property when the permits were issued. It has forfeited this claim.

11

Furthermore, contrary to Fox Hills's argument, the TPO is not within a "'class of restrictions'" that would prohibit it from conducting the renovations identified in its building permits. The completion of the renovation project is not conditioned on compliance with the TPO. (Cf. *Russ*, *supra*, 44 Cal.3d at pp. 843–844 [issuance of certificate of occupancy conditioned on developers paying TIDF would impair vested rights if permits had not contained transit mitigation condition].) The TPO is independent from the rights granted to Fox Hills under the permits and has no direct effect on the right to complete the work. The ordinance instead requires landlords like Fox Hills to comply with certain requirements when evicting or relocating tenants.

In sum, the trial court properly sustained respondents' demurrers to Fox Hills's writ of mandate cause of action, which was based solely on Fox Hills's vested rights claim. To the extent the declaratory relief and inverse condemnation causes of action were based on Fox Hills's vested rights allegations, the claims also fail to state a cause of action.

## C.    Fox Hills's Takings Claim is Not Ripe

Fox Hills argues the trial court erred in finding its "stand-alone" claim asserting application of the ordinance constituted a regulatory taking was not ripe. It contends that because there was "no question that the City's TPO applied to [its] property" as

---

(*High Sierra Rural Alliance v. County of Plumas* (2018) 29 Cal.App.5th 102, 111, fn. 2 ["New arguments may not be raised for the first time in an appellant's reply brief"].) Further, *Russ* did not state that notice was always required for a project or property to be subject to subsequently enacted legislation.

it had requested an exemption and the City refused, the claim was ripe. We disagree.

A takings claim that challenges the application of regulations to a particular property "'''''is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue,'" i.e., when "there has been a 'final, definitive position regarding' how the regulations will be applied to the land."'" (*Lafayette Bollinger Development LLC v. Town of Moraga* (2023) 93 Cal.App.5th 752, 778.) This "requirement ensures that a court can make "'the constitutional determination whether a regulation has deprived a landowner of 'all economically beneficial use' of the property, [citation], or defeated the reasonable investment-backed expectations of the landowner to the extent that a taking has occurred." [Citation.] Simply put, a court cannot say whether a regulation goes too far in restricting the use of property unless it knows how far the regulation goes.'" (*Ibid.*; see also *Howard v. County of San Diego* (2010) 184 Cal.App.4th 1422, 1430 (*Howard*) ["until there has been a 'final, definitive position' as to how the regulations will be applied to the land, a court cannot determine the extent of the economic impact, a factor that bears on the question whether a compensable taking has occurred"].)

While the United States Supreme Court has described the finality requirement as "relatively modest," the plaintiff must still show "that 'there [is] no question . . . about how the "regulations at issue apply to the particular land in question."'" (*Pakdel v. City and Cty. of San Francisco* (2021) 594 U.S. 474, 478.) Failure to exploit available procedures "may render a claim unripe *if* avenues still remain for the government to clarify or

13

change its decision." (*Id.* at p. 480; see also *Felkay v. City of Santa Barbara* (2021) 62 Cal.App.5th 30, 39 [landowner must follow "'reasonable and necessary steps to allow regulatory agencies to exercise their full discretion . . . including the opportunity to grant any variances or waivers allowed by law'"].)

"Closely related to the 'final decision' rule is the 'futility' exception . . . In order to invoke the futility exception, a plaintiff must show "'that the [agency] has declared what its ruling will be on a particular case."'" (*Howard*, *supra*, 184 Cal.App.4th at p. 1430.) The exception is "'extremely narrow.'" (*Calprop Corp. v. City of San Diego* (2000) 77 Cal.App.4th 582, 594.) "'To come within the exception, a sort of inevitability is required: the prospect of refusal must be certain (or nearly so).'" (*Toigo*, *supra*, 70 Cal.App.4th at p. 327.)

The first amended petition alleged that the TPO constituted a taking of Fox Hills's property for which it was entitled to compensation, including for the "lost rent on the to-be-renovated apartments." Fox Hills's claim is necessarily based not only on the requirement to return displaced tenants to the same units after the renovation work is completed, but also on its inability to raise the rents of its tenants beyond the amounts allowed by the RCO. Therefore, the question is whether the combined impact of the TPO and RCO is sufficiently great to support a regulatory takings claim.

Fox Hills acknowledges there are at least two procedures for seeking a rent increase above the RCO's limits: (1) pass-through recovery applications for capital improvements (CCMC § 15.09.225) and (2) rent adjustment applications (*id.* at § 15.09.220). The first amended petition alleged that most, if not all, of Fox Hills's expenses do not qualify for a pass-through

14

recovery application because "pass-through is limited to additions, but not replacement, of capital improvements." In addition, Fox Hills alleged that the rent adjustment application "contains a rebuttable presumption that the landlord is obtaining a reasonable return with respect to operation of the property" and excludes capital improvements. Fox Hills alleged this made the application process futile.

Even if Fox Hills's expenses are not recoverable through a pass-through recovery application, the Housing Division's "Guideline/Rule No. 2021-RC02" concerning rent adjustment applications clearly states that "[l]andlords may submit as part of their Application capital improvement expenses that have not been or are not eligible" for pass-through recovery applications. Thus, a rent adjustment application remains an available procedure for Fox Hills to obtain relief.

It is undisputed that Fox Hills did not submit a rent adjustment application. Whether the application of the TPO and RCO results in a regulatory taking depends on their economic impact and the extent to which they "'interfere[ ] with reasonable investment-backed expectations.'" (*Sandpiper Mobile Village v. City of Carpinteria* (1992) 10 Cal.App.4th 542, 548–549, disapproved on other grounds by *Travis v. County of Santa Cruz* (2004) 33 Cal.4th 757, 775, fn. 11.) Those factors cannot be evaluated until the City has arrived at a final position regarding how it will apply the rent adjustment provisions to Fox Hills's property. (*Sandpiper Mobile Village*, at pp. 548–549; see also *Amberhill Properties v. City of Berkeley* (9th Cir. 1987) 814 F.2d 1340, 1341 [where landlord did not seek rent adjustment from city, court could not decide whether application of regulations effected unconstitutional taking].) Until Fox Hills submits a rent

15

adjustment application, and the City determines whether to exercise its discretion to grant a rent adjustment, it is not possible to determine whether Fox Hills will receive a sufficient return on its investment. The trial court therefore properly sustained the demurrer to the inverse condemnation claim on the basis that it was not ripe.

## D. Fox Hills Does Not Demonstrate the Trial Court Abused its Discretion in Denying Leave to Amend

The burden of proving a reasonable possibility the defects of a pleading can be cured by amendment "is squarely on the plaintiff." (*Blank*, *supra*, 39 Cal.3d at p. 318.) "[A] plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' [Citation.] The assertion of an abstract right to amend does not satisfy this burden." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43 (*Rakestraw*).) The proffered "[a]llegations must be factual and specific, not vague or conclusionary." (*Id.* at p. 44.) "Where the appellant offers no allegations to support the possibility of amendment . . . there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend." (*Ibid.*)

Fox Hills makes no argument as to how it could amend the petition to state a cause of action. It fails to identify "factual and specific" allegations it could add if given leave to amend its claims. (*Rakestraw*, *supra*, 81 Cal.App.4th at p. 44.) Speculating that it "may" be able to allege that it "may not be able to recoup its investment" is insufficient. Fox Hills's assertion that it should have been allowed to conduct discovery and develop a factual

16

record also falls short of meeting its burden.  Accordingly, we find no abuse of discretion in the trial court's denial of leave to amend.

## DISPOSITION

The order is affirmed.  The City and Committee are awarded costs on appeal.


MORI, J.

We concur:


ZUKIN, P. J.


COGLIATI, J. **

---

**      Judge of the Santa Cruz County Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.